No. 81-518

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

IN RE THE MARRIAGE OF

CHARLES F. TESCH,

Petitioner and Respondent,

and

ELAINE P. TESCH,

Respondent and Appellant.

---

Appeal from:  District Court of the Ninth Judicial District,
              In and for the County of Teton
              Honorable R.D. McPhillips, Judge presiding.

Counsel of Record:

 For Appellant:

    Larry Juelfs argued, Choteau, Montana

 For Respondent:

    Charles M. Joslyn argued, Choteau, Montana

---

                              Submitted:  April 5, 1982

                              Decided:  July 15, 1982

Filed: JUL 15 1982

Thomas J. Kearney
                              Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal of an order denying the wife's motion to set aside a default judgment entered by the District Court of the Ninth Judicial District, Teton County. The default judgment dissolved the parties' marriage and distributed the main marital asset, the farm, to the husband.

The husband and wife married in 1947. All of the children of the marriage are now past the age of majority.

In 1955, the parties began to farm land known as the Passmore Place located in Teton County, outside of Choteau, Montana. Initially, they farmed under a partnership-lease agreement with the wife's brother. In 1960, they bought the land as joint tenants, borrowing $18,000 for the downpayment. In 1964, they refinanced, borrowing $66,000. Farm income was used to pay off the loans. The present amount owed on the farm is approximately $60,000.

The wife is fifty-three years old and has a seventeen year history of multiple sclerosis. Since early 1965 she has been severely disabled, unable to walk and unable to help in the operation of the farm. From 1964 to 1971, the husband ran the farm, cared for his wife, and raised the children. In 1971 the wife was moved to the Teton County Nursing Home in Choteau where she now resides.

A physician's report dated April 14, 1981, describes the wife's present physical condition:

> ". . . At the present time she [the wife] is unable to feed herself or even take water without somebody assisting her. She cannot sit on a chair without much support. She cannot even make an x on paper without somebody supporting her hand and thus assisting

-2-

her. She has lost control of her bladder and has an indwelling Foley catheter on a continuous basis.

"On examining her, her pupils do seem to react to light. Her eyes look straight ahead. She is unable to move the eyes to either side or up or down. To follow anything from side to side, she must move her head and she has movement of the head approximately 15 degrees in either direction. She is unable to look up much or down at all. Her hearing appears to be adequate. She can chew and can swallow. She does have movement of both upper extremitites, but is extremely spastic, more so on the left and less so on the right. She cannot touch her nose with her left index finger. She can eventually hit her nose with the right but the spasticity is very evident. . . The lower extremities are more or less rigid . . . When the pillow is removed from between her legs, the left leg crosses over the right because of the spasticity. Both feet are in a dropped position and really cannot be straightened at all.

"When talking with her, she can respond verbally with a one word response. The accuracy of the response is in question. I asked her what she had for breakfast today. She responded cereal. When checking with the nursing staff, she had only had juice this morning. Often her response is what she thinks you would like to hear. After less than 5 minutes, her verbal responses seemed to more or less stop and she responded primarily by just a shrug of the shoulder and I could not evaluate whether it was a postive or negative or she did not know.

"It is my impression that this patient is totally and completely physically disabled. Her mental responses are almost impossible to evaluate because of her physical inability to completely respond and communicate." (Petitioner's Exhibit #1 in July 21, 1981, hearing to set aside default judgment.)

On December 16, 1980, the husband filed for dissolution of his marriage, claiming that while the Passmore Place was held in joint tenancy, he was the true owner and it should be awarded to him. The wife was served with a summons and the petition on December 30, 1980.

A hearing was held on the husband's petition on

January 20, 1981. Neither the wife nor a representative for the wife was present. The following discussion took place at the hearing:

"THE COURT:  Mrs. Tesch--she's on this contract for deed from Passmore?

"MR. JOSLYN [ATTORNEY FOR HUSBAND]:  He has acted under her Power of Attorney for 4 or 5 or 6 years.

"THE COURT:  Is she competent -- Mrs. Tesch?

"MR. JOSLYN:  Pardon?

"THE COURT:  Is Mrs. Tesch competent?

"MR. JOSLYN:  That's something, Your Honor, that -- as far as I know, she is.  I've talked to her and --

"WITNESS [HUSBAND]:  Other than being muscular incapacitated because of the end nerve damage and she is not able to speak too many words at certain times, but as far as her powers of reasoning and recall and mental capacity there is no impairment whatever and never has been.

"THE COURT:  She knows what's going on?

"WITNESS:  Oh, absolutely.

"MR. JOSLYN:  Your Honor, for what it is worth, when we started this I went and we explained everything to her, you know, as much as possible, and I am confident that she understood everything, you know."

The District Court proceeded then to grant the divorce, requesting that a quitclaim deed or some other evidence be placed on the record showing that the wife voluntarily relinquished her interests in the farm. No such evidence was ever placed on the record.

The District Court made no determination of the net marital estate. No finding was made on any marital asset other than the farmland itself. The District Court, in granting the husband the property, found that the husband had purchased it through his own efforts and that, even

-4-

though the land was held in joint tenancy, the husband had not intended to give the wife an undivided one-half interest in the property.

On February 25, 1981, the Teton County Attorney filed a petition for appointment of a guardian for the wife. He requested the appointment so that a guardian could pursue the wife's interests by filing a motion to set aside the default judgment. Lyall Tesch, an adult son of the parties, intervened in the action, requesting that he be appointed guardian. He stated, however, that he did not want to be involved in trying to set aside the default judgment.

At the guardianship hearing, Lyall Tesch was appointed general guardian, but there was some confusion as to who would be appointed temporary guardian to represent the wife's interests in contesting the default judgment. The Teton County Attorney was not considered eligible to represent the wife's interests; neither was the County Welfare Director who happens to be the County Attorney's wife. The District Court asked if there was a Public Administrator who would be willing to represent the wife's interests. The County Attorney said that the Teton County Public Administrator was available, and he was then appointed guardian ad litem and conservator of the wife's estate.

On June 23, 1981, the Teton County Attorney filed a petition for removal of the Public Administrator as the wife's temporary guardian on the grounds that he refused to bring an action to invalidate the property settlement between the husband and wife. No notice was sent to any of the affected parties. Without notice or hearing a Teton

County Commissioner, Myron Wheeler, was appointed temporary guardian, conservator and guardian ad litem of the wife's estate.

The new temporary guardian as conservator made up an inventory of the wife's estate: the wife had $25.00 per month in social security payments and "various and sundry personal items."

On June 30, 1981, the Teton County Attorney, acting as attorney for the wife's guardian, Commissioner Wheeler, filed two motions to set aside the default judgment. The first motion claimed that the husband had committed fraud upon the District Court and that, under the last sentence of Rule 60(b), M.R.Civ.P., the judgment should be set aside. The second motion claimed that the severity of the wife's disability prevented her appearance and representation in court, and that under Rule 60(b)(6), M.R.Civ.P., the judgment should be set aside.

Under the time limits in Rule 60(c), M.R.Civ.P., the Teton County Attorney determined that the District Court had denied the motions and filed a notice of appeal on September 4, 1981. The District Court eventually entered its findings, conclusions and judgment denying the motions on November 27, 1981.

While the parties have raised various convoluted issues on appeal, the question now before this Court is simply whether the wife's motions to set aside the default judgment should have been granted.

Because the record does not show that the husband acted fraudulently or even in bad faith toward his disabled wife, we cannot grant the Rule 60(b) motion claiming that

the husband perpetrated fraud upon the trial court. Nevertheless, because of the extraordinary circumstances involving the severity of the wife's disabilities and the absence of anything in the record showing voluntary and knowing relinquishment of the wife's interests in the farm, equity demands that we set aside the default judgment under Rule 60(b)(6).

Rule 60(b)(6) provides that the court may relieve a party from a final judgment for any reason other than the previous five subdivisions of Rule 60(b). It is a catch-all provision, designed for use in extraordinary circumstances. See, Wright & Miller, Federal Practice & Procedure, section 2864. Unlike the first three subdivisions of Rule 60(b), there is no sixty-day time limit set on Rule 60(b)(6); the motion must only be made within a reasonable time.

Here, the extraordinary circumstances are apparent. The wife is totally disabled by multiple sclerosis. Such a disability, in itself, might warrant the setting aside of the default judgment. Here, however, other circumstances also support the setting aside of the judgment. Nothing on the record addresses the question of the wife's competency or her voluntary relinquishment of her interests in the farm. We cannot look to the findings and conclusions of the District Court because the trial court was divested of jurisdiction when the notice to appeal was filed. See, Bartmess v. Bartmess (1981), ___ Mont. ____, 631 P.2d 299, 38 St.Rep. 1097. Equity and public policy demand that we not allow a party to testify to the competency of the opposing party where the opposing party is neither present nor represented by counsel. See, Barone v. Cox (1976), 379

N.Y.S.2d 881, 51 A.D.2d 115.

We emphasize that the crucial problem with this case is that nowhere are the desires of the wife on record. While there is nothing to suggest that the wife did not agree to the divorce and property distribution, her wishes should nevertheless be placed on the record. In order to have the wife's wishes placed on record, the default judgment must be set aside, a competency hearing should be held to determine whether a guardian ad litem needs to be appointed under Rule 17(c), M.R.Civ.P., and, if no guardian is necessary, the parties on remand will have the opportunity to put on record whether or not the wife voluntarily and knowingly relinquishes her interest in the farm.

As a peripheral issue, the husband has objected to the appointment of Commissioner Wheeler as the guardian ad litem for the wife because of a conflict of interest. The District Court would have no authority to appoint a guardian who had "an actual conflict of interest in regard to the purpose for which the temporary guardianship is sought." Section 72-5-317(3), MCA; see also, section 72-5-312(4)(a), MCA. As a county commissioner for Teton County, it would appear Commissioner Wheeler's interests conflict with those of the wife, who is a resident, requiring full care, at the Teton County Nursing Home.

We therefore set aside the default judgment. We remand this case back to the District Court with instructions that a competency hearing be held, and a new guardian ad litem appointed under Rule 17(c), M.R.Civ.P., if the District Court finds this to be necessary.

_____
Justice

-8-

We concur:

_____
Chief Justice

_____

_____
Justices