NO. 91-200

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

IN RE THE MARRIAGE OF
GAVIN DUANE CASTOR,

        Petitioner and Appellant,

  and

SHIRLEY MAE CASTOR,

        Respondent and Respondent.

FILED

AUG 29 1991

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        James D. Elshoff, Attorney at Law, Great Falls,
        Montana

    For Respondent:

        Marcia Birkenbuel, Attorney at Law, Great Falls,
        Montana

Submitted on Briefs:  June 13, 1991

Decided:  August 29, 1991

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Gavin Castor appeals from a February 20, **1990,** order of the District Court of the Eighth Judicial District, Cascade County, Montana, denying his motion for modification of spousal maintenance payments and ordering him to pay Shirley Castor $6,066 in past-due maintenance payments, $4,000 representing Mrs. Castor's remaining share of his civil service retirement fund, $300 per month spousal support, and $250 in attorney's fees. We affirm.

We frame the issues as follows:

1. Should the District Court have set aside the February 20, **1991,** order under Rule 60(b), M.R.Civ.P. because of mistake, inadvertence, excusable neglect, or any other reason justifying relief?

2. Does a State District Court have the authority in a dissolution action to order the United States Office of Personnel Management to pay directly to a former spouse a share of a civil servant's monthly disability retirement annuity payments?

*3*. Did the District Court abuse its discretion by ordering Mrs. Castor to deliver all personal property in her possession awarded to Mr. Castor by the dissolution decree, after she had received in full her share of retirement benefits, past-due maintenance payments, and attorney's fees?

4. Did the District Court abuse its discretion by awarding $250 in attorney's fees to Mrs. Castor?

After **28** years of marriage, on April 1, **1988,** Gavin D. Castor

2

and Shirley M. Castor were granted a dissolution of marriage. Mr. Castor was required to pay **$675** per month spousal maintenance until the couple's home in Utah was sold. Maintenance would then be reduced to *$300* per month until Mrs. Castor became eligible for Social Security retirement benefits. Mr. Castor was ordered to pay $4,000 to Mrs. Castor as her share of his civil service retirement pension. The parties were allowed to keep certain personal property then in their possession, and Mrs. Castor was ordered to turn over certain personal property to Mr. Castor.

On October **15, 1990,** Mr. Castor moved to modify the dissolution decree by reducing the amount of spousal maintenance payments and moved to require Mrs. Castor to turn over titles to vehicles and other personal property awarded to Mr. Castor,

On December **6, 1990,** Mrs. Castor requested a continuance of the hearing on the motion for modification of the dissolution decree because notice of the hearing scheduled for that date was not received until November *30*, **1990.** The motion was granted, and the hearing was reset for January *23*, **1991.**

On January *22*, **1991,** the District Court ordered the January *23* date for the hearing to be vacated because of a conflict in the court's calendar and rescheduledthe hearing for February 14, 1991. Both parties received written notice of the continuance. Although Mr. Castor's counsel received the notice, he failed to see the new date of the hearing. **As** a consequence, neither Mr. Castor nor his attorney appeared at the hearing on February 14. After waiting for forty minutes, the District Court heard testimony from Mrs. Castor

3

and entered judgment in her favor.

In its February 20, 1991 order, the District Court required the United States Office of Personnel Management to continue to pay Mrs. Castor $582 per month from Mr. Castor's monthly retirement benefits until March 1991. At that time, the Office of Personnel Management was ordered to withhold $500 per month for Mrs. Castor. Of the $500 withheld, *$300* was for spousal maintenance and $200 was to be applied to the balance of Mrs. Castor's $4,000 share of retirement benefits, $6,066 in past-due spousal maintenance, and $250 in attorney's fees. In approximately three years when these obligations to Mrs. Castor had been paid in full, the Office of Personnel Management was ordered to withhold *$300* per month for spousal maintenance.

In addition, after Mrs. Castor's share of retirement benefits, past-due maintenance, and attorney's fees were paid in full, Mrs. Castor was required to deliver to Mr. Castor the personal property and title to vehicles awarded to him by the dissolution decree.

On March 13, 1991, the District Court denied Mr. Castor's motion to set aside the order modifying the dissolution decree. From these judgments, Mr. Castor appeals.

I

Should the District Court have set aside the February 20, 1991, order under Rule 60(b), M.R.Civ.P. for mistake, inadvertence, excusable neglect, or other reason justifying relief?

Sections (1) and (6) of Rule 60(b), M.R.Civ.P. provide that the court may relieve a party from a final judgment for "mistake,

4

inadvertence, surprise, or excusable neglect" or "any other reason justifying relief from the operation of the judgment."

Mr. Castor's counsel argues that he is "only human" and that his mistake in failing to notice the rescheduled date of the hearing on Mr. Castor's motion should not have been imputed to his client. Mr. Castor's counsel maintains that medical evidence *of* his client's disability would have changed the outcome of the court's ruling.

If the district court exercises its discretion in appraising or weighing facts of a particular case, on review this Court determines whether the district court, in varying degrees, has abused or misused its discretion. See Steer, Inc. v. Department of Revenue (Mont. 1990), 803 P.2d **601,** 603-04, 47 St.Rep. 2199, 2200. If the district court's decision does not involve the public policy that cases should be tried and decided on their merits, then the scope of review is the standard abuse of discretion test.

When the district court sets aside a default judgment pursuant to Rule 60(b), allowing the case to be tried on its merits, a showing of great abuse of discretion is necessary to reverse the district court's decision. Graham v. Mack (1985), 216 Mont. 165, 172, 699 P.2d 590, 594. But when the district court has refused to set aside a default judgment, "no great abuse of discretion need be shown to warrant reversal." Lords v. Newman (1984), 212 Mont. 359, 364, 688 P.2d 290, 293.

Generally, "mistake," "inadvertence," and "excusable neglect"

require some justification for an error beyond mere carelessness or ignorance of the law on the part of the litigant or his attorney. Lomas and Nettleton Co, v. Wiseley (7th Cir. 1989), 884 F.2d 965, 967. Mr. Castor's counsel has not offered an explanation other than his failure to note the rescheduled date of the hearing. Such a mistake is not enough to require setting aside a judgment under Rule 60(b), M.R.Civ.P. See Watson v. Fultz (1989), 239 Mont. 364, 369, 782 P.2d 361, 364 (no relief from judgment when attorney failed to notice hearing date in opponent's motion to amend findings): Griffin v. Scott (1985), 218 Mont. 410, 710 P.2d 1337 (no relief from judgment when attorney failed to read mail for five weeks because of work accumulated during his absence).

The general rule is that neglect of an attorney is attributable to the client. Myers, 235 Mont. at 236, 766 P.2d at 866. Mr. Castor's counsel relies on Lords v. Newman (1984), 212 Mont. 359, 688 P.2d 290, in which we held that attorney neglect can be excusable on the part of the client upon the proper showing. The attorney in Lords, after making a general court appearance, "totally abandoned his clients and disappeared from sight." Lords, 212 Mont. at 367, 688 P.2d at 295.

In Paxson v. Rice (1985), 217 Mont. 521, 706 P.2d 123, we distinguished Lords because, although the attorney in Paxson failed to act in response to numerous requests by opposing counsel, he had not abandoned his client and left the state. We held that the attorney's procrastination in filing answers and other documents was "a type of neglect which is properly attributable to a client,

6

and which we distinguish from the abandonment in <u>Lords</u>." Paxson, 217 Mont. at 525, 706 P.2d at 126. Similarly, the neglect in this case is properly attributable to the client.

In addition, the judgment of a district court can be set aside for "any other reason justifying relief from the operation of the judgment." Rule 60(b)(6), M.R.Civ.P. Generally, relief is afforded under subsection (6) of Rule 60(b) in extraordinary situations when circumstances go beyond those covered by the first five subsections or when a party in whose favor judgment was entered has acted improperly. Fuller v. Quire (6th Cir. 1990), 916 F.2d 358, 360; In re Marriage of Tesch (1982), 199 Mont. 240, 245, 648 P.2d 293, 296. We hold that Mr. Castor has not shown that the District Court abused its discretion in refusing to set aside the order of February 20, 1991 under Rule 60(b), M.R.Civ.P.

## II

Does a State District Court have the authority in a dissolution action to order the United States Office of Personnel Management to pay directly to a former spouse a share of a civil servant's monthly disability retirement annuities?

Mr. Castor claims that under § 25-13-608, MCA, his retirement benefits, as "disability benefits," are exempt from execution; therefore, the District Court did not have jurisdiction to order the United States Office of Personnel Management to pay a share of his disability retirement benefits directly to Mrs. Castor. Mrs. Castor counters that according to an Arizona case, Villasenor v. Villasenor (Ariz. App. 1982), 657 P.2d 889, the civil service

7

retirement annuities Mr. Castor receives do not constitute "disability benefits."

The issue of apportionment of civil service pensions between civil service "retirement" benefits under 5 U.S.C. § 8336 or § 8338 and civil service "disability" benefits under 5 U.S.C. § 8337 has been addressed in cases relating to division of property between spouses in community property states. See Levy v. Office of Personnel Management (Fed. Cir. 1990), 902 F.2d 1550; Villasenor v. Villasenor (Ariz. App. 1982), 657 P.2d 889. Although Mr. Castor asserts that these cases do not apply because Montana is not a community property state, the cases are instructive regarding apportionment of retirement and disability benefits as part of disability retirement annuities. Under § 25-13-608, MCA, although veterans' and social security benefits are subject to execution if they are levied for child support or spousal maintenance, "disability or illness benefits" are exempt. Section 25-13-608(1)(d), MCA. If the monthly benefits Mr. Castor is currently receiving qualify as "disability" benefits, such payments are exempt from execution.

The California Supreme Court addressed apportionment of military retirement and disability pay in In re Marriage of Sternquist (Cal. 1978), 582 P.2d 96. The husband became disabled, but remained in military service for twenty-six years. His regular "longevity" retirement annuity consisted of 65 per cent of his base pay: his "disability" retirement annuity was 75 per cent of his base pay. Consequently, the husband elected to receive disability

8

retirement. The court recognized that the husband's disability pay not only compensated him for loss of earnings because of compelled early retirement and personal suffering, but "also serves the objective of providing support for the serviceman and his spouse after he leaves the service." Sternquist, 582 P.2d at 101. The court awarded half of the annuity which was construed as the "retirement" component of the husband's retirement disability annuity to the wife and ruled that the "disability" component was the husband's separate property.[1]

In Levy v. Office of Personnel Management (Fed. Cir. 1990), 902 F.2d 1550, the court applied the principles set forth in Sternquist to civil service pensions. The court recognized that retirement pay based on disability has two components: (1) compensation to the civil servant for loss of earning power and personal suffering: and (2) retirement support. Levy, 902 F.2d at 1553. Accordingly, the rule for apportionment of retirement benefits is that the amount the civil servant receives each month as disability over and above what would have been received as longevity retirement benefits is the civil servant's separate property; the remainder is divisible community property. Id.

The formula applicable to civil service retirement benefits was detailed in Villasenor. A civil service employee can receive retirement and disability benefits under Chapter 83, 5 U.S.C. §§

---

[1] In Montana disability benefits may be included in the marital estate. In re Marriage of Cooper (1990), 243 Mont. 175, 179, 793 P.2d 810, 812.

**8301-8351 (1986),** of the Civil Service Code. <u>Villasenor</u>, 657 P.2d at 891. A civil servant can qualify for Chapter **83** benefits in several ways. When a civil service employee meets the criteria for age and length of service, he or she is entitled to "immediate retirement" benefits. 5 U.S.C. **§ 8336.** One who is separated after completing at least five years of civil service also qualifies for an annuity, but payments do not begin until the employee is **62** years old, referred to as "deferred retirement." 5 U.S.C. **§ 8338.** Finally, an employee with at least five years of civil service who becomes disabled is eligible for "disability retirement," with benefits payable immediately. 5 U.S.C. **§ 8337.** Mr. Castor is receiving the third type of benefits, "disability retirement," under **5** U.S.C. **§ 8337.**

Annuities for immediate, deferred, and disability retirement are all paid from the same fund, consisting primarily of contributions in the form of deductions from employees' pay. The annuity amounts for all three forms of retirement are calculated by use of the same basic formula, based upon the employee's average annual pay for the three highest-earning years and years of service. **5** U.S.C. **§ 8339;** <u>Villasenor</u>, **657** P.2d at **891.** Disability retirement is earned during years of service just as any other retirement pension, and disability is but one of several conditions causing rights in the plan to vest. <u>Villasenor</u>, **657** P.2d at **892.**

Depending on how many years of service the civil servant has, disability retirement can have both a "retirement" component and a **"disability"** component. The **"disability"** component becomes

10

proportionately smaller as the years of service increase and "disappears altogether for those who 'fall through the cracks' by, for example, having served more than 21.9 years but being too young to take immediate retirement, or being over 60 years but having too few years of service to take immediate retirement." Id. Mr. Castor, age 58 with 28 years of civil service employment, is one for whom the "disability" component disappears.

From the analysis presented in Villasenor, we conclude that Mr. Castor's monthly annuity is accurately characterized as "retirement" benefits, rather than "disability" benefits. Hence, the District Court is not precluded by § 25-13-608, MCA, from ordering the United States Office of Personnel Management to pay Mrs. Castor a share of Mr. Castor's monthly disability retirement annuity. We note that 5 U.S.C. § 8345(j)(1) allows civil service retirement benefits to be paid directly to a former spouse as provided by a court decree of dissolution. We hold that the District Court did not err in ordering the United States Office of Personnel Management to pay directly to Mrs. Castor a share of Mr. Castor's monthly disability retirement annuity.

III

Did the District Court abuse its discretion by ordering Mrs. Castor to deliver all personal property in her possession awarded to Mr. Castor by the dissolution decree, after she had received in full her share of retirement benefits, past-due maintenance payments, and attorney's fees?

Mr. Castor alleges that the District Court should have ordered

Mrs. Castor to turn over personal property awarded to him by the dissolution decree because no Montana statute allows the court to order the items to be held until his obligations are paid.

Section 40-4-209, MCA, allows the court to order a person obligated to pay maintenance who is delinquent in an amount equal to the total of six months of support payments to "post bond, give a mortgage, or provide security or guaranty for so long as there is a support delinquency." Section 40-4-209(2), MCA.

Mr. Castor's support obligation for six months was $4,040; the court found that he owed *$6,066* in past-due maintenance payments. Allowing Mrs. Castor to keep personal property awarded to Mr. Castor in the dissolution decree until support obligations have been paid can serve as "security or other guaranty" as provided for by § 40-4-209, MCA. We hold that the District Court stayed within the guidelines of § 40-4-209, MCA, and did not abuse its discretion in ordering Mrs. Castor to deliver personal property belonging to Mr. Castor after the delinquent support obligation had been paid.

IV

Did the District Court abuse its discretion by awarding $250 in attorney's fees to Mrs. Castor?

Mr. Castor contends that the District Court abused its discretion by awarding attorney's fees without an evidentiary hearing.

The court may award attorney's fees in dissolution cases:

   The court from time to time, after considering the
   financial resources of both parties, may order a party
   to pay a reasonable amount for the cost to the other

12

> party of maintaining or defending any proceeding under
> chapters 1 and 4 of this title and for attorney's fees
> . . . .

Section 40-4-110, MCA. Mr. Castor asserts that the District Court did not properly consider the "financial resources of both parties."

Since the statute is permissive, the appropriate standard of review is whether the court abused its discretion. In re Marriage of Sullivan (1990), 243 Mont. 292, 299-300, 794 P.2d *687*, 691-692. We have previously stated that because an award of $400 in attorney's fees approaches <u>de</u> <u>minimis</u>, were we to reverse, the costs on remand could easily exceed the amount originally awarded. We thus upheld the court's award of attorney's fees. In re Marriage of Chapin (1982), 202 Mont. 153, 156, 655 P.2d 991, 992. The same principle applies in this case. We hold that the District Court did not abuse its discretion by awarding $250 in attorney's fees to Mrs. Castor.

Affirmed.

_____
                    Justice

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices

13

Justice Fred J. Weber dissents as follows:

On October 15, **1990,** Mr. Castor moved to modify the dissolution decree. The petition was set for hearing on December **6, 1990.** On the date of that hearing, Mrs. Castor requested a continuance of the hearing because notice of hearing was not received until November **30, 1990.** The motion was granted and the hearing was reset for January **23, 1991.** On January **22, 1991,** the District Court, on its own order, vacated the hearing of January **23, 1991,** and rescheduled the hearing for February **14, 1991.** A5 pointed out in the majority opinion, both parties received written notice of the continuance. The counsel for Mr. Castor who had initiated the proceeding failed to note the new date of the hearing. As a result neither Mr. Castor nor his attorney were present at the hearing: and after waiting 40 minutes, testimony was taken from Mrs. Castor, and judgment was entered in her favor.

Counsel for Mr. Castor admits that it was his own failure to note the February 14 hearing which caused Mr. Castor, his client, and himself to miss the hearing. He does not in any way attempt to cover this up. He points out that his practice was to maintain two calendars with notes of scheduled court appearances and filing deadlines and to notify clients promptly when they must attend a hearing. He failed to follow that practice in this instance.

The majority points out that it will not review a decision to grant or deny a Rule 60(b) motion absent abuse of discretion. That is only a partial statement of the rule as we have most recently applied it. Using a federal Seventh Circuit Court case as

**14**

authority, the majority further states that generally mistake, inadvertence and excusable neglect require some justification beyond an error, mere carelessness or ignorance of the law.

This Court's 1990 authority on the same issue is set forth in Blume v. Metropolitan Life Ins. Co. (1990), 242 Mont. 465, 791 P.2d 784. In Blume the plaintiff filed a complaint against Metropolitan Life Insurance Co. (Metropolitan) and service was made on the State Auditor and Commissioner of Insurance. The complaint, summons and discovery documents were mailed by certified mail and were received by Metropolitan. Apparently the same were lost. Metropolitan failed to file an answer and a default judgment was eventually entered in the amount of $185,986.43. In Blume we cited the following as the controlling standard to be applied in considering the District Court's refusal to set aside the default judgment entered against Metropolitan. The unanimous Court stated:

> Where a trial court denies a motion to set aside a default judgment the standard of review is that <u>no great abuse of discretion need be shown to warrant reversal</u>, or, alternatively, '<u>slight abuse' is sufficient to reverse an order refusing to set aside a default</u>. The <u>Lords</u> court, which drew a distinction between the standards of review applied to cases where motions to set aside default judgments had been granted and those that had been denied based its holding on two basic tenets: (1) every litigated case should be tried on its merits and default judgments are not favored and (2) trial courts have a certain amount of discretion when considering a motion to set aside a default judgment. . . . (Citations omitted.) (Emphasis added.)

Blume, 791 P.2d at 785. The Court then set forth a great deal of the evidence submitted by Metropolitan to support its motion to set aside the default judgment, including the entry from the Metropolitan log which showed that the mail was received from the

15

Commissioner on February 9, 1989; and affidavits of various other persons who normally would have received information and acted in connection with litigation, but all failed to do so. The Court concluded that the evidence produced by Metropolitan demonstrated that its failure to appear was not due to any inexcusable neglect or disrespect for court or judicial process. They pointed out that it was a mystery what happened to the summons and complaint after it arrived at Metropolitan--although there is no argument that it did arrive at Metropolitan. The majority in <u>Blume</u> then quoted from a 1905 Montana case which stated:

> <u>Negligence or inadvertence directly traceable to a party litigant or his attorney</u>, no less excusable than that disclosed by this record, <u>has many times been held sufficient to warrant the opening of a default</u>, and trial courts have not infrequently been reversed for their refusal to set aside defaults under such circumstances. (Emphasis added.)

<u>Blume</u>, 791 P.2d at 787. <u>Blume</u> then concluded that the neglect in the 1905 case, where an inexperienced stenographer signed an acceptance of service and then misplaced a complaint and summons, was comparable to the loss of summons and complaint in <u>Blume</u>. <u>Blume</u> then pointed out that the judgment would adversely effect Metropolitan because the amount of the judgment exceeded $185,000.

In 1990, we concluded in <u>Blume</u> that an unexplained loss of a summons and complaint and subsequent failure to appear was excusable neglect. Under the present majority opinion, we are concluding that the unexplained failure to appear for a continued hearing was somehow more reprehensible than the loss of a summons and complaint. I find no basis for such a distinction.

16

I conclude that the neglect on the part of counsel for Mr. Castor was excusable in the same manner that the neglect on the part of Metropolitan and its various personnel was excusable. As in Blume, the judgment here adversely effected Mr. Castor. As in Blume Mr. Castor's counsel moved promptly to set aside the default. In addition, we point out that Mr. Castor in this case was the party who originally petitioned for the modification and who has been denied his opportunity to present any evidence.

Based upon Blume I would conclude that the District Court abused its discretion and vacate the default judgment.

_____
Justice

17

August 29, 1991

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

James D. Elshoff
Attorney at Law
P.O. Box 2323
Great Falls, MT  59403

Marcia Birkenbuel
Attorney at Law
613 Strain Bldg.
Great Falls, MT  59401

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
          Deputy