No. 96-127

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

MARK N. ROBERTS,

      Plaintiff and Appellant,

v.

EMPIRE FIRE AND MARINE INSURANCE CO.,

      Defendant and Respondent.



FILED

SEP 11 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry Moran, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          L. Randall Bishop, Jarussi & Bishop, Billings,
Montana; Stephen D. Roberts, Bozeman, Montana

      For Respondent:

          Steve Reida, Landoe, Brown, Planalp & Braaksma,
Bozeman, Montana

               Submitted on Briefs:  June 24, 1996

                      Decided:  September 11, 1996

Filed:

_____

          Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Mark Roberts appeals the order from the Eighteenth Judicial District Court, Gallatin County, setting aside the entry of a default judgment on the issue of liability and the subsequent final judgment on damages against respondent, Empire Fire and Marine Insurance Company.

We reverse.

The issue in this case is:

Did the District Court manifestly abuse its discretion when it issued its order setting aside the default judgments of liability and damages entered against Empire Fire and Marine Insurance Company?

## FACTS

In November 1992, Dirk Hinkle and the appellant, Mark Roberts (Roberts) were involved in an accident at an uncontrolled intersection in Bozeman, Montana. Following the accident, Hinkle's insurer, Empire Fire and Marine Insurance Company (Empire), offered to pay 75% of Roberts' property damage based upon its opinion that Roberts was contributorily negligent. Roberts rejected Empire's offer and filed suit against Empire for vehicle damage as well as damages for the inconvenience caused by the loss of use of his vehicle. After Roberts filed suit, Empire filed an offer of judgment which Roberts then later accepted.

On March 3, 1995, Roberts again filed suit against Empire alleging unfair claims settlement practices. Service of process was made upon the Montana Commissioner of Insurance (MCI) on March

9, 1995. MCI forwarded a cover letter, the Summons, the Complaint and First Discovery Requests to Empire's corporate office in Nebraska.

Empire's receptionist received these documents on March 13, 1995. Empire's mail room log-in sheets reflect that the documents were then routed to Ms. Amy Bones, corporate counsel for Empire. Ms. Bones is designated as receiver for service of process from the State of Montana. Although Ms. Bones contends that she never saw the documents, the record shows that it was normal procedure for Ms. Bones to hand-deliver papers from her office to the claims department.

In any event, the documents did reach Empire's claims department and from there were hand-delivered to Mr. David Sedlacek. Mr. Sedlacek is responsible for supervising Empire's claims unit and for assigning new claims. Mr. Sedlacek wrote notes on the documents indicating his awareness of their contents, and intended that they be forwarded to Dennis Magnuson, one of Empire's "file handlers" and also an attorney.

In Mr. Sedlacek's affidavit, he stated that in all likelihood he handed the documents to Ms. Heidee Dorr, a claims clerk who at that time had been employed by Empire for only a few days. Ms. Dorr stated in her affidavit that if she was in the claims department at all on March 13, 1995, it would have been her first day there and she would not yet have received any training. Mr. Sedlacek speculated that Ms. Dorr, rather than pulling the 1992 file that had been prepared in the Roberts v. Hinkle case and

3

delivering the file and the documents to Mr. Magnuson, filed the documents in that closed Roberts v. Hinkle file.

Aware of the contents of the documents, Mr. Sedlacek did not "flag" them as important, as was his duty; did not confirm that Mr. Magnuson received the documents; and did not inquire as to the progress being made on the matter. Mr. Sedlacek and Mr. Magnuson work across the hall from one another and often see each other several times daily.

On April 25, 1995, the clerk of court entered a default judgment on liability against Empire in Montana's Eighteenth Judicial District Court. Pursuant to Rule 55(b), M.R.Civ.P., the determination of damages was set for a later date. On October 2, 1995, the District Court held an evidentiary hearing. Following this hearing, the court entered a $615,000.00 final judgment against Empire, including $15,000.00 in compensatory damages and $600,000.00 in punitive damages. Roberts then filed this judgment with the District Court in Douglas County, Nebraska, on November 27, 1995.

After learning of the default judgment on December 1, 1995, Empire found Roberts' complaint inside the closed Roberts v. Hinkle file. Empire then filed a Motion for Relief, citing to Rules 60(b)(1) and 60(b)(6), M.R.Civ.P. This motion was later amended to include Rule 55(c), M.R.Civ.P. Affidavits and depositions were filed with the District Court, and a hearing was held on January 30, 1996. By order dated February 2, 1996, the District Court granted Empire's Motion to Set Aside the Default Judgment.

4

On February 5, 1996, Roberts filed an appeal with this Court. On March 28, 1996, Empire filed a motion to dismiss Roberts' appeal for lack of jurisdiction, claiming that an order granting a motion to vacate a default is nonappealable. Based on the language of Rule 1(b)(2), M.R.App.P., this Court determined that it had jurisdiction over the matter and therefore, Empire's motion to dismiss was denied. Roberts v. Empire Fire and Marine Insurance Co. (Mont. 1996), 915 P.2d 872, 53 St.Rep. 359. This appeal followed.

## DISCUSSION

Did the District Court manifestly abuse its discretion when it issued its order setting aside the default judgments of liability and damages entered against Empire Fire and Marine Insurance Company?

In this matter, the District Court granted Empire's motion based on Rule 60(b)(1), M.R.Civ.P. This rule provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect;. . . .

The standard of review used by this Court when reviewing a district court's decision to grant a motion to set aside a default judgment is whether the court has manifestly abused its discretion. Siewing v. Pearson Co. (1987), 226 Mont. 458, 461, 736 P.2d 120, 122 (citing Lords v. Newman (1984), 212 Mont. 359, 365-66, 688 P.2d 290, 293-94). Therefore, our discussion will center on whether Roberts has shown a manifest abuse of discretion by the District

5

Court which would require reversal. First National Bank of Cut Bank v. Springs (1987), 225 Mont. 62, 65, 731 P.2d 332, 334.

It is Roberts' position on appeal that, although the extent of poor judgment necessary to reflect a "manifest abuse of discretion" has not been clearly defined by this Court, there are previous decisions that have established the standard for setting aside a default. *See, e.g.,* In re Marriage of McDonald (1993), 261 Mont. 466, 468, 863 P.2d 401, 402. And, although no Montana case law clearly establishes the parameters of "manifest abuse of discretion," Roberts argues that the Ninth Circuit Court of Appeals has recognized that a court may abuse its discretion if it does not apply the law correctly or if it erroneously assesses the facts. United States v. Rahm (9th Cir. 1993), 993 F.2d. 1405, 1410; Northern Alaska Environmental Center v. Lujan (9th Cir. 1992), 961 F.2d 886, 889. Extending this argument to the instant case, Roberts contends that the District Court did not apply the law correctly, and therefore the court manifestly abused its discretion in setting aside the default judgment.

Roberts urges this Court to consider several cases involving instances of neglect or inattentiveness in an office setting in which this Court has affirmed a district court's refusal to set aside a default. *See* Siewing, 736 P.2d 120; Myers v. All West Transport (1988), 235 Mont. 233, 766 P.2d 864; Paxson v. Rice (1985), 217 Mont. 521, 706 P.2d 123; Griffin v. Scott (1985), 218 Mont. 410, 710 P.2d 1337.

6

In Siewing, a company vice-president received a summons and complaint. Shortly thereafter, the vice-president resigned his position with the company and the documents remained undiscovered until a month later. This Court affirmed the district court and held that none of the evidence provided at trial established excusable neglect. Siewing, 736 P.2d at 122. In Myers, this Court affirmed the district court's conclusion that the defendant's inattention to mail did not establish excusable neglect. Myers, 766 P.2d at 867 (citing Siewing, 736 P.2d at 122).

In Paxson, an attorney intended to file an answer but postponed its preparation. This Court stated that this was not a factual situation where "reasonable minds might conclude" that the conduct of the attorney was excusable. Paxson, 706 P.2d at 126. Following Paxson, this Court affirmed the district court in Griffin. There, the district court determined that the failure of counsel to read his mail did not establish excusable neglect. Griffin, 710 P.2d at 1338.

Roberts contends it is clear that this Court has consistently held that a party's inattention or failure to respond to mail does not establish excusable neglect. Therefore, Roberts asserts that Empire's inattention to Roberts' complaint cannot be excused by setting aside the default judgment. We agree.

This Court is aware of the importance of putting an end to litigation and establishing the respective rights of the parties once and for all, if necessary, through a default judgment. Karlen v. Evans (Mont. 1996), 915 P.2d 232, 235, 53 St.Rep. 337, 338.

7

However, Rule 60(b) presents an exception to this doctrine of finality. The policy behind the rule is the preference for cases to be tried on their merits. Judgments by default are not favored. Maulding v. Hardman (1993), 257 Mont. 18, 23, 847 P.2d 292, 296.

In this case, the District Court was presented with an abundance of cases from both sides that discussed "specific reasons why relief should or should not be granted." The District Court noted that there had been little if any discussion regarding the fundamental purpose of Rule 60(b)(1), M.R.Civ.P. The District Court then stated that in its view:

> Rule 60(b)(1) provides a basic correction system for protecting the legal process from errors caused by neglect, inadvertence, and mistake -- clearly, improper foundations upon which to base legal judgments.

In its conclusion, the District Court concurred with a statement from a 1978 case in which this Court held:

> Each case must be determined upon its own facts; and when the motion is made promptly and is supported by a showing which leaves the court in doubt or upon which reasonable minds might reach different conclusions, the doubt should be resolved in favor of the motion.

Clute v. A.B. Concrete (1978), 179 Mont. 475, 479, 587 P.2d 392, 395 (citing Nash v. Treat (1912), 45 Mont. 250, 122 P. 745). The District Court determined that "on the facts of this case," Empire's failure to respond to Roberts' summons and complaint stemmed from the type of "mistake" contemplated by Rule 60(b)(1), M.R.Civ.P.

This Court is aware that default judgments are not favored, but is equally aware of the limited set of factual circumstances in

8

which we have consistently upheld a district court's order of default. Collectively, the cases embodying these factual circumstances show, as appellant argues, that evidence of office mismanagement, neglect, and inattentiveness on the part of high-level employees can support a default judgment. Individually, each of these cases in which we upheld a default order contain facts establishing careless conduct bordering on willful ignorance. In addition, in McDonald, *supra*, we stated that pursuant to Rule 55(c), M.R.Civ.P., a default judgment may be overturned according to Rule 60(b), M.R.Civ.P., only if certain "good cause" criteria are met by the moving party. McDonald, 863 P.2d at 402 (citing Blume v. Metropolitan Life Insurance Co. (1990), 242 Mont. 465, 791 P.2d 784). In that case, we concluded that the appellant "failed to satisfy the threshold requirement of excusable neglect which would justify setting aside the default decree." McDonald, 863 P.2d at 403. Citing In re Marriage of Castor (1991), 249 Mont. 495, 817 P.2d 665, we declared that "'mistake', 'inadvertence,' and 'excusable neglect' generally require some justification for an error beyond mere carelessness . . . ." McDonald, 863 P.2d at 403.

Clearly, the facts here establish careless conduct amounting to inexcusable neglect, the type of conduct we have consistently held to support a default. The District Court determined that the facts showed the kind of excusable mistake contemplated by Rule 60(b)(1), M.R.Civ.P., apparently focusing on Ms. Dorr's misfiling of the documents. While we agree that a low-level employee who misfiled documents on her first day of work committed an excusable

9

mistake, we fail to understand how this mistake could extend to excuse the neglectful and inattentive conduct of management-level employees aware of the importance of the documents from the moment they were received.

Because the law and facts so clearly support a default judgment, we hold that the District Court manifestly abused its discretion in setting the default judgment aside.

We reverse.

_____
                                    Justice

We Concur:

_____

_____

_____
        Justices

10

Justice James C. Nelson specially concurs.

I concur in our opinion. I write separately only to set forth what I believe is further support and grounds for our decision that the District Court manifestly abused its discretion in setting aside the default judgment entered in favor of Roberts.

At the outset it is important to note that the District Court entered the default judgment against Empire following a hearing and the receipt of testimony and evidence. Even acknowledging the obvious--i.e. that Empire was not in court to present countervailing evidence or to rebut Roberts' evidence--the tenor and detail of the trial court's findings of fact and conclusions of law and of the court's comments regarding Empire's treatment of Roberts and the handling of his claim (covering some 19 pages) are telling.

One cannot get the true flavor of the court's complete exasperation and frustration at Empire's conduct without reading the court's entire October 19, 1995 decision. Some examples serve to make the point, however.

Among other things, the court found and concluded on the basis of the evidence, testimony, discovery and record, fully referenced and cited in detail in its opinion, that the liability of Empire's insured was at all times reasonably clear; that Empire refused to pay Roberts' claim without conducting a reasonable investigation based upon all available information; that the insurer's claim that Roberts was contributorily negligent was entirely without basis in fact or in law; that Empire neglected to attempt in good faith to

11

effectuate a prompt, fair and equitable settlement of Roberts' claim; that Empire's conduct proximately caused Roberts to suffer prolonged anxiety, worry, frustration and anger; and that Empire intentionally disregarded facts that created a certainty of injury to Roberts and deliberately proceeded to act with total indifference to the fact that such injury would be suffered.

Conclusions of Law numbers 6 and 15, perhaps, best epitomize the court's outrage. In Conclusion of Law number 6, the court stated:

> Montana has provided its citizens a remedy for insurance bad faith because the claims settlement process is filled with potential for abuse. *See* Holmgren v. State Farm Mutual Automobile Insurance Company, 976 F.2d 573, 578 (9th Cir. 1992). This case is an extreme example of just such abuse. As this Court stated in its ruling following the evidentiary hearing on damages:

> > I can tell you quite plainly, Counsel, that I have not seen a clearer case of insurer misconduct in the years that I have been on the bench.
> >
> > There is no question in the Court's mind that the misconduct was based upon an intent to abuse the citizens of the state of Montana, including this plaintiff, and that it also was the effort of the insurer to completely negate the requirements of the Montana Claims Practices regulations.
> >
> > They failed to discharge the duties of a legitimate insurer. Their effort, quite plainly in the eyes of the Court, was to rip off an innocent victim so that it could profit by not discharging the obligations that it had under its contract, and it fully and completely failed to investigate and settle this claim as a reasonable insurer ought to.
> >
> > I think the evidence indicates that the defendant has misconstrued the morality and the ethics and the law that govern the activities of insurance companies, and in

12

essence, what it did in this case was to practice extortion, a direct and unequivocal act of extortion.

In a similar vein is the court's Conclusion of Law number 15:

Empire Fire attempted to use delay and leverage to extort a discount of 25% off the admitted value of Mark Roberts' claim. By comparison to the total amount of his property damage claim, the 25% discount which Empire Fire tried to extract from Mark Roberts amounted to slightly more than $600.00. This is a comparatively small sum of money when viewed in isolation, but a potentially huge source of profit when applied to the many thousands of claims resolved each year throughout the far-flung operations of this insurer.

Given the references to the record in the court's findings of fact and conclusions of law, it appears that the court based its findings on substantial supporting evidence and that it did not come to its conclusions of law idly or without justification.

What is truly remarkable, however, is that in granting Empire's motion to set aside the default judgment for excusable neglect, the court did not in the least discuss its previous findings of fact and conclusions of law or offer any hint that its prior decision might have been open to question because of argument or evidence placed before the court in support of Empire's Rule 60(b)(1) motion. In fact, with the exception of an indirect reference to neglect, inadvertence and mistake, the court's February 20, 1996 memorandum and order granting Empire's motion did not actually address or conclude that Empire had met any of the four elements of its burden to show good cause, as hereinafter discussed.

Rather, the court simply went from concluding in its findings of fact and conclusions of law that Empire was guilty of the most

13

egregious claims handling practices in the court's experience on the bench--in fact, misconduct amounting to "extortion"--to setting aside that same decision because "each case must be determined upon its own facts."

The point is that if each case must be determined on its own facts (Clute v. Concrete (1978), 179 Mont. 475, 479, 587 P.2d 392, 395) and if the facts were as the court found them to be in its initial decision--and there is nothing in the court's subsequent decision calling those findings into question--then default or no default, the court's judgment against Empire for compensatory and punitive damages was fully justified and should not, as a matter of law, have been set aside under any circumstances.

A default judgment may only be set aside "for good cause shown." In order to establish good cause for purposes of Rule 60(b)(1), M.R.Civ.P., among the various burdens imposed upon a defaulted party, (establishing excusable neglect being simply one of four) is the requirement that the defaulted party also make a prima facie demonstration that it has a meritorious defense to the claim--here Roberts' bad faith claim. In Re Marriage of McDonald (1993), 261 Mont. 466, 468, 863 P.2d 401, 402 (citing Blume v. Metropolitan Life Ins. Co. (1990), 242 Mont. 465, 467, 791 P.2d 784, 786).

In support of its Rule 60(b)(1) motion, Empire strenuously argued it had various defenses to Roberts' bad faith claim--i.e. Empire advanced matters with respect to Roberts' property damage claim that, in Empire's view, justified the way it handled that

14

claim, thus establishing a reasonable basis pursuant to § 33-18-242(5), MCA, for contesting the claim. The dissent makes reference to these defenses.

In opposition to Empire's motion, Roberts, with equal intensity argued that on the basis of the record and discovery in his property damage claim, Empire's defenses were not meritorious. Moreover, Roberts contended that, as a matter of law, Empire could not demonstrate a meritorious defense because, in the underlying case, pursuant to Rule 68, M.R.Civ.P., Empire had made an unconditional offer of judgment for $3,000, an amount in excess of Roberts' liquidated property damage claim, which offer was accepted by Roberts. As a result, Roberts contends that Empire admitted liability thus precluding any present argument that liability was not clear in the underlying case.

While this argument is not directly raised as an issue on appeal, I do note that in interpreting Rule 68, M.R.Civ.P., we have stated that:

> It would be inconsistent to allow a procedure designed to facilitate settlement and avoid litigation costs to be used to challenge liability and, thereby, extend litigation.
>
> . . . .
>
> Rule 68 specifies that an offer of judgment made after a finding of liability but before determination of damages shall have the *same effect as an offer made before trial*. That effect, if the offer is accepted, is to render the issue of liability moot.

Weston v. Kuntz (1981), 194 Mont. 52, 57-58, 635 P.2d 269, 272-73 (emphasis added). See also, Matter of Certain Justice Court Expenses (1994), 264 Mont. 510, 513, 872 P.2d 795, 797.

15

My only point in raising this is that in the context of this case, given that liability and damage issues are rendered moot by an accepted offer of judgment; given the vigorous record-based arguments on both sides of this aspect of Empire's motion; and given the trial court's scathing findings of fact and conclusions of law, as referred to above, the court's failure to even address this aspect of Empire's burden of proof, let alone conclude that it had established, prima facie, a meritorious defense to Roberts' bad faith action, leaves a void in the court's decision that cannot be simply ignored.

The District Court, having failed to rule that Empire had met this aspect of its burden to show good cause for setting Roberts' default judgment aside, we are left to conclude that the court was not satisfied that Empire had made a prima facie showing of a meritorious defense. Again, in the context of the trial court's findings of fact and conclusions of law and the accepted offer of judgment, that conclusion is more consistent than any assumption to the contrary.

More importantly, the court's failure to conclude that Empire had shown prima facie a meritorious defense begs the question that, in the face of the court's findings of fact and conclusions of law, none of which were in any way called into question by the court, how, as a matter of law, *could* Empire possibly have defended Roberts' bad faith claim? An insurer cannot at once be guilty of "a direct and unequivocal act of extortion" in its settlement of a legitimate claim and at the same time prevail in a defense that its

16

conduct was reasonable under the unfair claim settlement practices provisions of Title 33, Chapter 18 of the Montana Code.

Under such circumstances and the unique facts of this case, if the trial court determined that it was appropriate to set aside Roberts' default judgment for excusable neglect, then it also had the obligation to conclude that its initial decision was at least questionable and that Empire had met its burden to establish a prima facie meritorious defense to Roberts' bad faith claim.

In failing to do that, I can come to no other conclusion than that the court was not satisfied that Empire had demonstrated all four of the elements of good cause to set aside Roberts' default judgment and that, as a consequence, it manifestly abused its discretion in granting Empire's Rule 60(b)(1) motion.

_____
Justice

Justices Terry N. Trieweiler and W. William Leaphart join in the foregoing special concurrence.

_____
_____
Justices

17

Justice Charles E. Erdmann dissenting.

I respectfully dissent from the Court's opinion.

This Court has stated that an underlying concern to any review of default is that every litigated case should be tried on the merits and that judgments by default are not favored. Lords v. Newman (1984), 212 Mont. 359, 363, 688 P.2d 290, 293. This principle is the cornerstone of appellate review of default. Lords, 688 P.2d at 293. A second principle that constantly appears in our case law is that trial courts are vested with a certain amount of discretion when they consider a motion to set aside a default. Lords, 688 P.2d at 293.

Two standards of review have emerged from our attempt to observe these guiding principles of review on motions to set aside a default. Lords, 688 P.2d at 293. One standard applies when the trial court has denied a motion to set aside the default. In these instances the resulting standard of review is that "no great abuse" or only "slight abuse" is sufficient to reverse an order refusing to set aside a default. Lords, 688 P.2d at 293.

The second standard arises in situations like the present case when the trial court has granted the motion to set aside the default judgment. In these circumstances, a stricter standard of review emerges due to the combined policy considerations of letting the parties have their day in court and our respect for the trial court's sound discretion. The action of the trial court will only be set aside upon a showing of "manifest abuse" and an order setting aside a default judgment will be reversed only in

18

exceptional cases. Lords, 688 P.2d at 293 (citing McClurg v. Flathead Cty. Comm'rs (1980), 188 Mont. 20, 610 P.2d 1153; Kootenai Corp. v. Dayton (1979), 184 Mont. 19, 601 P.2d 47; Holen v. Phelps (1957), 131 Mont. 146, 308 P.2d 624).

The record in the present case indicates that the summons, complaint, and first discovery requests were received at Empire's corporate office in Nebraska on March 13, 1995. The documents were routed to Empire's claims department and were hand delivered to David Sedlacek, who is responsible for supervising and assigning claims. Sedlacek's handwriting appears on the documents and he testified that his notes on the documents reflect that he looked up the claim on the computer, found the date of loss, claim number, and identity of the claim handler. The computer claim information also indicated that the claim was closed.[1] Sedlacek stated that his normal procedure, at that point, would have been to hand the summons and complaint to the claims clerk and instruct him or her to pull the closed file from basement storage and deliver it to the claims handler. Heidee Dorr was Sedlacek's newly hired claims clerk at the time. Apparently, Dorr improperly filed the documents

---

[1] This case began on November 30, 1992, with an accident at an uncontrolled intersection in Bozeman. That accident resulted in a lawsuit captioned "Mark Roberts v. Dirk Hinkle," Gallatin County Cause No. DV 93-174. In that cause of action, Roberts accepted an offer of judgment of $3000 on September 12, 1994. The District Court also awarded Roberts attorney fees, and on February 21, 1995, Hinkle's insurer (Empire) paid Roberts the fee award. The present claim, alleging unfair claims settlement practices by Empire, was filed on March 3, 1995.

in the closed file and Sedlacek indicated it was his belief that Dorr's actions were the result of miscommunication.

Empire did not respond to the complaint and on April 25, 1995, the clerk of court ordered a default judgment on liability against Empire. A hearing on damages was held on October 2, 1995, for which Empire was not provided notice and in which Empire obviously did not participate. Following the hearing, the court entered a final judgment against Empire for $15,000 in compensatory damages and $600,000 in punitive damages for its liability for bad faith in defending a slow-speed, noninjury intersection accident which was settled for $3,000.

Roberts filed the final judgment in Nebraska on November 27, 1995. On December 4, 1995, Empire filed a motion for relief from judgment citing Rule 60(b)(1) and (6), M.R.Civ.P., and the following day filed an amended motion citing the additional authority of Rule 55(c), M.R.Civ.P.

Rule 60(b), M.R.Civ.P., provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . or (6) any other reason justifying relief from the operation of the judgment.

Empire argued to the District Court that Roberts' complaint was misfiled through mistake, inadvertence, or excusable neglect and therefore relief was appropriate under Rule 60(b)(1), M.R.Civ.P. In the alternative, Empire argued that Rule 60(b)(6), M.R.Civ.P., should be applied to grant relief due to the extraordinary

20

circumstances of the case, including the substantial amount of money awarded. In granting Empire's motion, the District Court stated that:

> There is very little, if any, discussion of the fundamental purpose of Rule 60(b)(1) and why such a Rule is absolutely necessary to the law and to the administration of justice. As the Court views the matter, Rule 60(b)(1) provides a basic correction system for protecting the legal process from errors caused by neglect, inadvertence, and mistake--clearly, improper foundations upon which to base legal judgments.

In its conclusion, the District Court concurred with this Court's holding in Clute v. A.B. Concrete (1978), 197 Mont. 475, 587 P.2d 392:

> Each case must be determined upon its own facts; and when the motion is made promptly and is supported by a showing which leaves the court in doubt or upon which reasonable minds might reach different conclusions, the doubt should be resolved in favor of the motion.

Clute, 587 P.2d at 395.

The majority correctly notes that no Montana case clearly establishes the parameters of "manifest abuse of discretion." The majority adopts Roberts' argument that the District Court manifestly abused its discretion by not applying the law correctly. However, the test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. Gaustad v. City of Columbus (1995), 272 Mont. 486, 488, 901 P.2d 565, 567. "Manifest" is defined as: "obvious to the understanding, evident to the mind, not obscure or hidden and is synonymous with open, clear, visible, unmistakable . . . and

21

self-evident." Black's Law Dictionary 962 (6th ed. 1991). Thus, under a "manifest abuse of discretion" standard of review, this Court may only reverse a lower court if it is obvious that the court abused its discretion.

This Court has defined "mistake" as some unintentional act, omission or error arising from ignorance, surprise, imposition or misplaced confidence. In re Marriage of Broere (1994), 263 Mont. 207, 209, 867 P.2d 1092, 1094. The present case involves a mistake in Empire's office procedures--a mistake that should not be fatal to its defense of the bad faith tort claim. Dorr was supposed to pull the closed Roberts v. Hinkle file and transfer the suit papers to a claims handler. Instead, the complaint mistakenly ended up in the closed file. Dorr misunderstood her instructions, or the instructions were not clearly given, and the "mistake" that resulted was due to an omission or error arising from misplaced confidence between members of the organization. The record before the District Court clearly established a breakdown in office procedures resulting in a misfiled complaint. The court did not manifestly abuse its discretion when it determined that the facts of the case fell within the meaning of "mistake" under Rule 60(b)(1), M.R.Civ.P.

Rule 55(c), M.R.Civ.P., states that a court may set aside an entry of default for "good cause shown" and this Court has set forth four elements to determine when such good cause exists. The defendant is required to show (a) excusable neglect; (b) that he or she proceeded with diligence; (c) that the judgment, if permitted

22

to stand, will affect him or her injuriously; and (d) that there is a defense to the plaintiff's cause of action upon the merits. Blume v. Metropolitan Life Ins. Co. (1990), 242 Mont. 465, 467, 791 P.2d 784, 786 (citing Kootenai, 601 P.2d at 51).

The majority states that "[c]learly, the facts here establish careless conduct amounting to inexcusable neglect." I disagree. Under the facts of this case, including the fact that the initial claim had been settled, paid, and closed out, Empire's conduct demonstrates excusable neglect. Prior to receiving the complaint, Empire had not received any notice of Roberts' intention to file an unfair claims settlement practices action. Dorr was in her second week of work on March 13, 1995. She was trained by Empire and recognized to be competent at performing her duties at the end of her first week on the job. Even though the complaint apparently was not "flagged" as is standard procedure in this type of case, there is no evidence that this was anything more than an oversight --a mistake--which was compounded by the misfiling of the complaint. In this regard, this case is similar to Keller v. Hanson (1971), 157 Mont. 307, 485 P.2d 705, where a default judgment was initially entered but later set aside pursuant to Rule 60(b)(1), M.R.Civ.P. On appeal, this Court affirmed the district court and noted that:

> [D]efendants' attorney after receiving plaintiff's complaint had somehow misfiled it under defendant Ben Hanson's name in another file as there were 3 other active files in the office pending at that time in Ben Hanson's name.

Hanson, 485 P.2d at 706.

23

Empire also acted with due diligence upon learning of the default judgment. Empire learned of its default on Friday afternoon, December 1, 1995, and on Monday, December 4, 1995, Empire filed its motion for relief from judgment. Furthermore, it is difficult to argue that a $615,000 judgment will not have an adverse affect on Empire.

The record indicates that Empire was not without meritorious defenses to Roberts' claim. Throughout the underlying case, Hinkle asserted contributory negligence by Roberts and contested clear liability in his answer, interrogatory answers, and deposition. In addition to contesting total liability, Empire stated in its brief in support of its motion for relief from judgment that, contrary to Roberts' allegations, it did not misrepresent pertinent facts, fail to conduct a reasonable investigation, or fail to effectuate a fair and equitable settlement.

Empire disputed Roberts' allegation that he could not obtain repair of his vehicle due to Empire's unfair claims settlement practices and that Empire intentionally deprived Roberts of property and legal rights entitling him to punitive damages. Empire also denied Roberts' claim for emotional distress damages relying on this Court's holding in Sacco v. High County Independent Press (1995), 271 Mont. 209, 896 P.2d 411, where we stated that such claims require a showing that the plaintiff's distress is so severe that no reasonable person could be expected to endure it.

Section 33-18-242(5), MCA, states that an insurer may not be held liable for unfair trade practices if it had a reasonable basis

24

in law or in fact for contesting the claim or the amount of the claim. The record indicates that Empire had asserted a reasonable basis for contesting both its liability for the bad faith claim, as well as the damages assessed, and therefore had raised a meritorious defense to Roberts' cause of action. I would therefore conclude that Empire satisfied the four elements of the Blume test and demonstrated good cause for setting aside the default judgment pursuant to Rule 55(c), M.R.Civ.P.

In his special concurrence, Justice Nelson emphasizes the incongruity between the scathing nature of the District Court's findings of fact and conclusions of law from the evidentiary hearing on damages and its order granting Empire's motion to set aside the default judgment. However, it must be remembered that Empire did not appear at either the hearing on liability or the hearing on damages to present its defense to the bad faith tort claim. Furthermore, the District Court's failure to reconcile the two rulings does not rise to the level of manifest abuse of discretion. Perhaps the court itself was troubled by the fact that its earlier ruling was based on only one side of the story.

I am no less concerned about abuse of Montana citizens by out-of-state insurers than anyone else. However, the bigger issue here is that Empire did not have its deserved day in court, just as we all would hope courts in other states would allow Montana litigants to be heard. Moreover, here the District Court determined, after reviewing Empire's motion and supporting brief, that the case should proceed toward trial. Such a determination

25

lies within the sound discretion of the District Court and under the facts of the  present case I cannot conclude that the District Court manifestly abused its discretion in granting Empire's motion to set aside the default judgment.

I would therefore affirm the District Court.

_____
Justice