DA 12-0054

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 35

LINDA GREEN,

        Plaintiff, Appellant, and
        Cross Appellee,

    v.

RONALD RAY GERBER and
STOCKTON OIL COMPANY,

        Defendant, Appellee, and
        Cross Appellant.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
                   In and For the County of Musselshell, Cause No. DV-11-06
                   Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Patricia D. Peterman, Patten, Peterman, Bekkedahl & Green, PLLC,
                Billings, Montana

        For Appellee:

                Perry J. Schneider, Tim E. Dailey, Milodragovich, Dale,
                & Steinbrenner, P.C., Missoula, Montana

                             Submitted on Briefs:  November 7, 2012

                                     Decided:  February 12, 2013

Filed:

                            _____
                                     Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 In December 2008, Linda Green was driving her vehicle southbound on Highway 87 North in Musselshell County, Montana, when she was struck by a truck owned by Stockton Oil Company (Stockton Oil or Stockton) and driven by Ronald Ray Gerber. Green suffered bodily injuries as a result of the accident as well as property damage to her vehicle. On January 7, 2011, Green filed a Complaint in the Fourteenth Judicial District Court against Stockton Oil and Gerber seeking damages. Stockton Oil was served but Gerber was not. Stockton did not respond to the Complaint and a default was entered against the company in February 2011. A damages hearing was subsequently conducted and a judgment for damages totaling $308,200 was entered in April 2011. In October 2011, Stockton moved to set aside the default judgment. Sixty-eight days later, the District Court granted Stockton's motion.

¶2 Green appeals, contending the District Court lacked jurisdiction to set aside the default judgment once 60 days expired, citing M. R. Civ. P. 60(c)(1). She also opines that Stockton failed to satisfy the elements of a successful Rule 60(b) motion. Stockton urges us to uphold the District Court order setting aside the default judgment. In the event we conclude the motion was deemed denied by operation of Rule 60(c)(1) and the District Court's order must therefore be vacated, it cross-appeals, arguing that the deemed denial constituted a slight abuse of discretion. We reverse and remand.

## ISSUES

¶3 Direct appeal: Did the District Court err in granting Stockton Oil's Motion to Set Aside Default Judgment 68 days after it was filed?

¶4 Cross-appeal: Did the District Court slightly abuse its discretion in deeming denied Stockton's motion to set aside the default judgment?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 On December 2, 2008, Green's vehicle was struck by a Stockton Oil Company truck driven by Ronald Gerber. Green was injured and her car was damaged. Following the accident, Green and Stockton Oil's insurer, EMC, worked together for a period of time during which EMC paid $139,246.80 toward Green's medical bills and resolution of the claim. However, in late December 2010 discussions broke down and on January 7, 2011, Green filed a Complaint and Demand for Jury Trial (Complaint) against Stockton Oil and Gerber seeking damages. On January 10, 2011, summonses were prepared for both Stockton Oil and Gerber, and on January 27, Stockton Oil was served with the Complaint and Summons.[1]

¶6 On February 22, 2011, a default was entered against Stockton after the company failed to answer the Complaint. On March 31, 2011, the District Court held a hearing to determine Green's damages. Green did not disclose to the court receipt of funds from EMC. On April 5, 2011, the District Court entered a Judgment by Default against Stockton Oil ordering the company to pay Green $308,200 in damages plus 10% interest per annum. These damages included claims for past and future medical bills, emotional distress, loss of enjoyment of life, and pain and suffering.

---

[1] It is undisputed that Gerber was never served with the Complaint or the Summons and, therefore, is not a party to this appeal. The default judgment was entered solely against Stockton Oil.

3

¶7 On September 26, 2011, a Writ of Execution for Green's judgment was issued. It was served on Stockman Bank on October 11, 2011. The record reveals that $138,273.15 was collected from both Gerber's and Stockton Oil's Stockman Bank accounts on behalf of Green and placed in trust with Green's attorney. However, these levied funds were subsequently returned to Gerber and Stockton.[2]

¶8 On October 19, 2011, citing M. R. Civ. P. 60(b)(6), Stockton Oil filed a Motion to Set Aside Default Judgment. Stockton Oil primarily argued that Green had failed to disclose to the District Court that she had received payments totaling $139,246.80 from Stockton Oil's insurer, EMC. Stockton maintained that the Default Judgment in the amount of $308,200 should be set aside as it represented excessive damages in light of the undisclosed insurance payments.

¶9 On October 31, 2011, Green filed her brief in opposition to Stockton Oil's motion. She argued that she had not yet recovered monies pursuant to the Judgment, and she acknowledged that the $308,200 judgment would be reduced by the amount of funds previously received from Stockton's insurer. She also argued that Stockton's motion should not be granted because Stockton could not satisfy the elements of a successful Rule 60(b) motion.

¶10 Pursuant to Rule 60(c), the District Court had 60 days within which to rule on Stockton's Rule 60(b) motion to set aside the default judgment. The failure to rule within those 60 days resulted in the motion being "deemed denied." Rule 60(c)(1). The

---

[2] As noted above, no judgment was entered against Gerber so the levy upon his account was executed in error.

deadline for the District Court's ruling was December 19, 2011. In a two-line order dated December 27, 2011, the District Court, without explanation or rationale, granted Stockton's motion to set aside the default judgment.

¶11 On January 17, 2012, Stockton Oil filed an answer to Green's Complaint on behalf of itself and Gerber. Green appeals the District Court's order granting Stockton's motion, asserting in part that upon expiration of the 60 days allocated for a ruling under Rule 60(c), the District Court lost jurisdiction over the matter and could no longer issue any rulings in the case. In the alternative, she argues that Stockton failed to establish that it was entitled under Rule 60(b) to have the default judgment set aside. Stockton argues the court's order setting aside the default judgment was correct, and that the order should stand in light of the misconduct of Green's counsel in the manner in which she obtained the default judgment.

## STANDARD OF REVIEW

¶12 Whether a district court has jurisdiction to rule on a matter is a question of law which we review to determine whether the district court had authority to act. A court exceeds jurisdiction through acts which exceed the defined power of a court, whether that power be defined by constitutional provisions, express statutes or rules developed by the courts. *In re Marriage of Richards*, 2001 MT 183, ¶ 5, 306 Mont. 212, 31 P.3d 1002.

¶13 We review the deemed denial of a motion to set aside a default judgment for a slight abuse of discretion. *Ford Motor Credit Co. v. Wellnitz*, 2008 MT 314, ¶ 11, 346 Mont. 61, 194 P.3d 630.

## DISCUSSION

5

¶14 *Did the District Court err in granting Stockton Oil's Motion to Set Aside Default Judgment 68 days after it was filed?*

¶15 M. R. Civ. P. 55(c) permits a court to set aside a default judgment in accordance with Rule 60(b). Rule 60(b)(1)-(5) allows a party to file a motion with the district court to relieve the party from a final judgment, order or proceeding for several specific reasons, including but not limited to, a mistake, newly discovered evidence, fraud, and a void or satisfied judgment. Rule 60(b)(1)-(5). Rule 60(b)(6) allows a party to seek relief from a final judgment for "any other reason that justifies relief." A party seeking relief under Rule 60(b) must file its motion "within a reasonable time."[3] Rule 60(c)(1)(2011). Rule 60(c)(1) further provides that if the court fails to rule on the 60(b) motion within 60 days after the motion is filed, "the motion must be deemed denied."

¶16 For many years, district courts and this Court have stated that once a motion has been deemed denied, the district court *loses jurisdiction* to act further. *See e.g. State ex rel. Sinko v. District Court*, 64 Mont. 181, 187-88, 208 P. 952, 955 (1922); *Johnson v. Eagles Lodge Aerie 3913*, 284 Mont. 474, 478, 945 P.2d 62, 64 (1997); *Wellnitz*, ¶ 17; *Mobley & Sons, Inc. v. Weaver*, 2009 MT 312, ¶ 17, 352 Mont. 396, 218 P.3d 472. For the reasons set forth below, these cases as well as those cited in footnote 4 are to a limited extent overruled.

¶17 In *Miller v. Eighteenth Jud. Dist. Court*, 2007 MT 149, 337 Mont. 488, 162 P.3d 121, we acknowledged our confusing and often "confounding" use of the term "jurisdiction." In *Miller*, we were asked to determine the consequences of a prosecutor's

---

[3] Prior to October 1, 2011, the effective date of the current Montana Rules of Civil Procedure, motions filed under Rule 60(b)(1)-(3) had to be filed within 60 days of entry of the judgment.

failure to file a notice of intent to seek the death penalty within 60 days of criminal arraignment. Standard 1.1a of the Montana Supreme Court Standards for Competency of Counsel for Indigent Persons in Death Penalty Cases (Standard) obligates a prosecutor to file in the district court and serve upon counsel of record within 60 days after arraignment a notice stating whether the prosecutor intends to seek the death penalty upon a conviction. The prosecutor in *Miller* let the 60 days following arraignment expire without filing the notice. *Miller*, ¶ 6. Upon expiration of the 60-day notice of intent period, Miller and his co-defendant LeBrum filed separate motions to preclude the State from seeking the death penalty and preclude imposition of the death penalty as a sentence. *Miller*, ¶ 7. The State subsequently filed its notice of intent arguing that the defendants were not prejudiced by its delinquent filing. *Miller*, ¶ 8. The district court agreed and denied Miller's and LeBrum's motions. *Miller*, ¶ 12. Miller and LeBrum sought supervisory control from this Court. *Miller*, ¶ 14.

¶18 Miller and LeBrum argued that the 60-day deadline created "a jurisdictional defect" precluding the State from seeking the death penalty and imposing it as a sentence. *Miller*, ¶ 42. We responded that "[i]t is important not to confuse categorical time prescriptions with jurisdictional provisions." *Miller*, ¶ 43. We explained that subject-matter jurisdiction "involves the fundamental power and authority of a court to determine and hear an issue. Hence, a provision is properly characterized as 'jurisdictional' if it 'delineates the classes of cases . . . falling within a court's adjudicatory authority.' " *Miller*, ¶ 43 (citation omitted). While disagreeing with Miller and LeBrum's jurisdictional argument, we determined that the prosecutor failed to timely

7

file the requisite notice, and that the Standard did not contain an exception that would allow a late filing. We observed that the Standard constituted "a categorical time prescription and not a jurisdictional provision," and that it is " 'unalterable' on a defendant's motion but can be forfeited if the defendant 'waits too long to raise the point.' " *Miller*, ¶ 46. We therefore reversed the district court's order allowing the late notice of intent.

¶19 In *Davis v. State*, 2008 MT 226, 344 Mont. 300, 187 P.3d 654, we revisited this issue as it applied to the one-year period within which a criminal defendant may challenge the validity of his or her sentence. Section 46-21-102, MCA. In *Davis*, Davis agreed to plead guilty to attempted deliberate homicide, assault on a peace officer, and criminal endangerment. He also waived his right to withdraw his guilty plea or to challenge his sentence by direct appeal, habeas corpus, or post-conviction relief. *Davis*, ¶ 5.

¶20 Subsequently, Davis moved for appointment of counsel for post-conviction proceedings. The district court issued a minute entry indicating that Davis' earlier counsel remained as appointed counsel for post-conviction; however, neither Davis nor his counsel received notice of the continuation of representation. By the time it was discovered, the one-year post-conviction time bar in § 46-21-102, MCA, had run. *Davis*, ¶ 7. Davis moved to have the one-year time bar tolled. The State did not respond to Davis' motion and the district court, sua sponte, questioned whether it had jurisdiction over this motion. It ultimately concluded that the one-year time bar was "jurisdictional"

and could not be tolled absent new evidence of a constitutional violation. *Davis*, ¶ 8. Davis appealed. *Davis*, ¶ 9.

¶21 Citing extra-jurisdictional cases concluding that statutorily-prescribed time periods are "rigid time prescriptions for constitutionally significant purposes, but . . . do not define or limit subject-matter jurisdiction," (*In re Civil Commitment of Giem*, 727 N.W.2d 198, 203 (Minn. App. 2007)), we determined that the one-year time bar in § 46-21-102, MCA, was not jurisdictional. *Davis*, ¶¶ 15, 25. We therefore remanded the matter to the district court with specific instructions to consider Davis' motion on equitable grounds. *Davis*, ¶ 25.

¶22 More recently in *BNSF Ry. Co. v. Cringle*, 2010 MT 290, 359 Mont. 20, 247 P.3d 706, we were asked to determine whether BNSF's failure to satisfy the 14-day filing deadline contained in § 49-2-505(3)(c), MCA, deprived the district court of subject-matter jurisdiction. Relying on *Davis* and *Miller*, among others, we noted in *Cringle* that "[t]he [L]egislature does not deprive the courts of subject matter jurisdiction when it enacts filing or notice deadlines. . . . We have emphasized the importance of not confusing the situation of a claimant's untimely filing with the district court's subject matter jurisdiction." *Cringle*, ¶ 13. We continued that "categorical time prescriptions" do not "withdraw" or "circumscribe" the district courts' subject matter jurisdiction. *Cringle*, ¶ 14. Accordingly, we remanded *Cringle* to the district court with instructions that the court hear BNSF's "alleged good cause that would justify its motion for an extension of time" to file its appeal of the Department of Labor's ruling under § 49-2-505(3)(c) and (4), MCA. *Cringle*, ¶ 28.

¶23 The foregoing cases are not completely apposite because they address situations in which a party has failed to comply with a rule-based or statutory deadline. Here, it is the court which failed to comply with a rule-based deadline. Nonetheless, we conclude that the analyses in these cases of whether a court has jurisdiction to act once a deadline has expired have application in both contexts. In other words, the legal concepts to be considered vis-à-vis a court's jurisdiction to further act once a court misses a rule-based or statutory deadline are the same as those applied when a party misses such a deadline.

¶24 As the foregoing cases illustrate and for good reason, we have moved away from past pronouncements that statutory or rule-based time bars constitute jurisdictional impediments upon the district courts' authority to act. Quite simply, unless a statute, rule, or constitutional provision expressly imposes jurisdictional limitations, the expiration of a time bar does not deprive a district court of the jurisdiction to further act in the matter before it.[4] Therefore, we conclude the District Court *did not lose jurisdiction* of this matter upon expiration of the 60-day time period.

---

[4] Accordingly, we hereby overrule the cases set forth in ¶ 16 of this Opinion to the limited extent that they stand for the proposition that a court loses jurisdiction to act upon the expiration a statutory or rule-based time bar. We also overrule in the same limited manner *State ex rel. King v. District Court*,107 Mont. 476, 86 P.2d 755 (1939); *State ex rel. Green v. District Court*, 126 Mont. 176, 178, 246 P.2d 813, 814 (1952); *State ex rel. Gilreath v. District Court*, 127 Mont. 431, 265 P.2d 651 (1954); *Leitheiser v. Montana State Prison*, 161 Mont. 343, 347, 505 P.2d 1203, 1206 (1973); *Cain v. Harrington*, 161 Mont. 401, 506 P.2d 1375 (1973); *Oster v. Oster*, 186 Mont. 160, 606 P.2d 1075 (1980); *Wallinder v. Lagerquist*, 201 Mont. 212, 653 P.2d 840 (1982); *Winn v. Winn*, 200 Mont. 402, 651 P.2d 51 (1982); *Marriage of Miller*, 238 Mont. 108, 112, 776 P.2d 1218, 1220 (1989); *Bechhold v. Chacon*, 248 Mont. 111, 809 P.2d 586 (1991); *Marriage of McKinnon*, 251 Mont. 347, 825 P.2d 551 (1992); *Maulding v. Hardman*, 257 Mont. 18, 22, 847 P.2d 292, 295 (1993); *Wippert v. Blackfeet Tribe*, 260 Mont. 93, 102, 859 P.2d 420, 425 (1993); *Marriage of Richards*, 2001 MT 183, 306 Mont. 212, 31 P.3d 1002; and *Forsythe v. Leydon*, 2004 MT 327, 324 Mont. 121, 102 P.3d 25.

¶25 Having concluded the court did not lose jurisdiction of the case once the 60-day time period expired, we must next determine whether the District Court erred in entering its untimely order setting aside the default judgment. We conclude that it did. While many of the cases cited herein erroneously conclude that the district court lost jurisdiction after failing to meet a time bar, these cases also stand for the proposition that the time limits set forth in Rules 59 and 60 are mandatory and should be strictly enforced. For example, in *Wellnitz* we stated "Rule 60(c) incorporates the strict 60 day time limit for a district court to rule on a motion for relief from a judgment under Rule 60(b). We have consistently enforced this deadline. The time limits provided in these rules are mandatory and are strictly enforced." *Wellnitz*, ¶ 13.

¶26 In *Forsythe*, we rejected Forsythe's argument that the temporal limitations contained in Rule 59(d) (the "deemed denied" provision similar to that contained in Rule 60, are unconstitutional because they deprive her of procedural due process). *Forsythe*, ¶ 10. We cited *Kelly v. Sell & Sell Paint Contractors*, 175 Mont. 440, 443, 574 P.2d 1002, 1003 (1978), for the proposition that while Rule 59(d) "may in some cases, work harsh results . . . it is perhaps more important that the public have the expectation and right to finality of judgments. This can only be accomplished when there is a cut-off time for a District Court to rule." We further observed that "just because a rule is arbitrary does not mean it should not be favored." *Forsythe*, ¶ 9.

¶27 Statutory and rule-based deadlines are important and must be strictly enforced. Thus, though the District Court had jurisdiction to act after the 60-day "deemed denied" deadline had passed, it erred in categorically ignoring the expiration of the deadline and

11

granting the motion to set aside the default judgment. Once the motion to set aside the judgment was deemed denied by operation of law, Stockton's recourse was "to appeal the denial in order to preserve the issue as to whether the default judgment should be set aside." *Johnson*, 284 Mont. at 479, 945 P.2d at 65.

¶28 The foregoing rule that rule-based and statutory deadlines must be strictly enforced carries with it a caveat. As we noted in *Miller*, ¶ 46, a time prescription is "unalterable" but can be forfeited if a party "waits too long to raise the point." By way of illustration, had Green failed to promptly challenge the District Court's untimely granting of Stockton's motion to set aside the default judgment, and instead proceeded to trial on the merits of the action, a belated appeal challenging the court's earlier untimely ruling would be too late. As we noted in *State v. Malloy*, 2004 MT 377, ¶ 11, 325 Mont. 86, 103 P.3d 1064, quoting § 1-3-207, MCA, "it is a well-established maxim of law that 'acquiescence in error takes away the right of objecting to it.[5]'" Because Green timely appealed the District Court's order, this caveat does not come into play here.

¶29 The practical effect of our ruling that the District Court erred in setting aside the default judgment is that the motion to set aside the default judgment was "deemed denied" at the expiration of 60 days. This being so, we now address Stockton's cross-appeal issue and Green's argument that Stockton failed to satisfy the elements of a successful Rule 60(b) motion.

---

[5] By contrast, the existence of subject-matter jurisdiction can be raised at any time by any party or by the court. *Big Spring v. Conway (In re Estate of Big Spring)*, 2011 MT 109, ¶ 23, 360 Mont. 370, 255 P.3d 121.

¶30 *Did the District Court slightly abuse its discretion in deeming denied Stockton's motion to set aside the default judgment?*

¶31 Stockton argued to the District Court that it was seeking relief from the default judgment under Rule 60(b)(6). Relying on *Maulding v. Hardman*, 257 Mont. 18, 847 P.2d 292 (1993), the company asserted that to be successful under *Maulding*, it was required to show (1) good cause and (2) a meritorious defense to the underlying claim. Stockton proclaimed that its "good cause" was Green's failure to share adverse information with the District Court which, in turn, led the court to award excessive damages. Similarly, Stockton's claimed meritorious defense was that the "judgment clearly [had] excessive damages."

¶32 Green countered that *Maulding* was inapposite and, therefore, the two-prong standard in *Maulding* was not applicable to this case. She asserted that the proper standard for setting aside a default judgment under Rule 60(b)(6) was set forth in *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 25, 338 Mont. 423, 166 P.3d 451. Green argued that for Stockton's Rule 60(b)(6) motion to prevail, Stockton must establish: (1) extraordinary circumstances; (2) that it moved to set aside the judgment within a reasonable period of time, and (3) that it was blameless. Green maintained that Stockton did not establish that it was blameless for the entry of a default judgment against it. She also argued that under *Essex*, Stockton had to show that none of the specific reasons set forth in Rule 60(b)(1)-(5) applied to this case, and that the company failed to address this requirement. Therefore, Green argued, Stockton's failure to establish blamelessness; extraordinary circumstances; and that it did not qualify for relief

13

under Rule 60(b)(1)-(5) precluded the District Court from granting the motion to set aside the default judgment.

¶33 On appeal, Green claims Stockton did not meet its burden of establishing *any* of the three *Essex* requirements needed to prevail under Rule 60(b)(6). She argues that Stockton did not establish extraordinary circumstances that prevented the company from properly filing an answer to the Complaint or that the company was blameless for failing to answer. She contends that Mykel Stockton's affidavit to the effect he could not recall being served was insufficient to establish that he had not been served, in light of the process server's affirmative affidavit to the contrary. She further states that Stockton's motion to set aside the default judgment, filed six months after entry of the judgment, was not filed within a reasonable time.

¶34 As in the District Court, Stockton maintains on appeal that *Maulding* provides the appropriate legal standard here because cases involving "an analysis of the counsel's misconduct in obtaining the default judgment and **not** that of the party moving to set aside the default judgment" are "different from the run-of-the-mill Rule 60(b)(6) case." As such, Stockton urges us to not rely on "the more recent Rule 60(b)(6) cases," such as *Essex*, but return to our *Maulding* analysis. Stockton opines that a review of "the entire Rule 60(b)(6) case law" reveals there are two categories of cases: (1) cases involving extraordinary situations that go beyond those covered in the first five subsections of Rule 60(b); and (2) cases in which the party in whose favor judgment was entered has acted improperly. The company asserts the *Essex* standard applies to cases in category 1 and the *Maulding* standard applies to cases in category 2. Additionally, Stockton maintains

14

that "this case and *Maulding* fit hand in glove," and therefore we should affirm the District Court's ruling setting aside the default judgment. For the reasons set forth below, we disagree.

¶35 Because Stockton brought its motion to set aside the default judgment under Rule 60(b)(6), and the District Court granted the motion based upon such argument, we analyze the case under that provision of Rule 60(b) and do not analyze whether the motion should have been brought under Rule 60(b)(1)–(5). However, we take this opportunity to reiterate the general rule that where the circumstances underlying a default judgment raise grounds that are covered by Rule 60(b)(1)-(5), Rule 60(b)6 is not available for application. *Mont. Prof'l Sports, LLC v. Nat'l Indoor Football League, LLC*, 2008 MT 98, ¶ 54, 342 Mont. 292, 180 P.3d 1142. *See also Bartell v. Zabawa*, 2009 MT 204, 351 Mont. 211, 214 P.3d 735 (Cotter, J., dissenting). We now turn to the question of whether to apply the *Maulding* test or the *Essex* test.

¶36 In *Maulding*, Maulding claimed to have been injured when he was a passenger in a car driven by Hardman and the car slid off the road and into a ditch. With Maulding then taking the wheel, Hardman and the two other passengers pushed the car out of the ditch. No one appeared injured and everyone went home. However, Maulding later went to the hospital claiming injuries. *Maulding*, 257 Mont. at 21, 847 P.2d at 294.

¶37 In his complaint, Maulding alleged Hardman was drinking and driving recklessly. Although served, Hardman failed to answer Maulding's complaint and the district court entered a default judgment against him. *Maulding*, 257 Mont. at 21, 847 P.2d at 295. He moved to have it set aside and the district court scheduled a hearing on the motion. The

15

hearing, however, was conducted after the "deemed denied" deadline and Maulding argued at the hearing that the district court no longer had jurisdiction over the matter. The district court took the issue of jurisdiction under advisement but conducted the hearing. *Maulding*, 257 Mont. at 22, 847 P.2d at 295. At the hearing, Hardman testified that he was not reckless and that loose gravel caused the car to slide off the road as they rounded a curve. He also stated that another passenger in the car was a corroborating witness who would testify in support of Hardman's defense. *Maulding*, 257 Mont. at 23-24, 847 P.2d at 296. In other words, Hardman presented a meritorious defense to the underlying claim. Hardman also presented evidence of gross misconduct on the part of Maulding's attorney in obtaining the default judgment. Subsequently, however, the court concluded it was without jurisdiction to set aside the default judgment and Hardman appealed.

¶38    On appeal, we reversed the district court and set aside the default judgment under Rule 60(b)(6). Citing *First Nat'l Bank v. Springs*, 225 Mont. 62, 67, 731 P.2d 332, 335 (1987),[6] we applied a two-prong test of "good cause" and a "meritorious defense to the action." *Maulding*, 257 Mont. at 23, 847 P.2d at 296. We acknowledged Hardman's meritorious defense and concluded that "good cause" for setting aside the default judgment existed, in large part, based upon plaintiff's counsel's conduct. *Maulding*, 257 Mont. at 25, 847 P.2d at 297. Among other things, plaintiff's counsel had initially worked with Hardman's insurer and then refused to return any calls from the insurer or

---

[6] In *First Nat'l Bank*, we stated "the party seeking to set aside an entry of default [judgment] must establish good cause for his failure to appear and the existence of a meritorious defense to the action."

provide documentation of the claim. Instead, plaintiff sought and obtained a default judgment against Hardman for special and punitive damages, and then delayed giving notice of the judgment to the insurer until after the 60 days within which Hardman could have filed a Rule 60(b)(1)-(3) motion had expired. We further observed that plaintiff's counsel failed to disclose certain facts to the court in the ex parte default proceedings that were material to the propriety of default judgment and the award of punitive damages. Based upon this conduct and the questionable manner in which plaintiff's damages were established in the district court, we concluded that Hardman was entitled to relief under Rule 60(b)(6). *Maulding*, 257 Mont. at 25, 847 P.2d at 298.

¶39    Stockton maintains that the conduct of Green's counsel compels the same result, arguing that Green's failure to advise the District Court at the time of entry of the default judgment that Stockton's insurer had already paid her the sum of $139,246.80, justified the order setting aside the default judgment. We disagree. Although the sums previously paid by the insurer were not disclosed at the time of entry of judgment, Green has consistently conceded the propriety of a set-off for these amounts against the judgment amount. Moreover, Maulding obtained an award of compensatory damages without presenting expert testimony on plaintiff's medical condition and an award of punitive damages by arguably misrepresenting the facts underlying the accident to the district court. Here, there was no similar level of misconduct. While we do not condone her lack of candor with the District Court at the time of the default judgment hearing on damages, the actions of Green's counsel do not present the level of improper conduct that we found in *Maulding* to constitute good cause for setting aside the default judgment. *In re*

17

*Marriage of Castor*, 249 Mont. 495, 500, 817 P.2d 665, 668 (1991). We therefore conclude that *Maulding* is inapposite. Moreover, because this Court in *Maulding* erroneously applied the two-part test to be applied when considering a motion to set aside a default—as opposed to a default judgment—we are constrained to overturn it to a limited extent so as to eliminate competing lines of authority in our Rule 60(b)(6) case law.

¶40 It is important to maintain the distinction between setting aside a default and setting aside a default judgment. Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." We have repeatedly held that a party seeking to set aside the entry of default must establish good cause for doing so, and the existence of a meritorious defense to the action. *McClurg v. Flathead County Comm'rs*, 188 Mont. 20, 610 P.2d 1153 (1980). However, we subsequently—and erroneously—relied upon a "good cause" analysis when addressing the propriety of setting aside a default judgment in *First Nat'l Bank*. *First Nat'l Bank*, 225 Mont. at 67, 731 P.2d at 335. In turn, we relied upon *First Nat'l Bank* in *Maulding*, quoting it for the proposition that "a party seeking to set aside a default judgment must show both a good cause for doing so under Rule 60(b) and the existence of a meritorious defense." *Maulding*, 257 Mont. at 23, 847 P.2d at 296. Thus, *Maulding* perpetuated the erroneous importation of the "good cause" standard for setting aside a default, into cases concerned with setting aside a default judgment.

¶41 A default is accomplished at the request of the moving party by mere clerical entry at the expiration of the time allotted for a responsive pleading; a default judgment, on the

18

other hand, is the final decision of a court of law. While the terms we use when addressing the burden on a movant seeking to set aside a default versus a default judgment are somewhat amorphous, it should be more difficult to achieve the latter than the former. We therefore deem it necessary to reassert the distinction between the burden imposed on a party seeking to set aside a default (good cause and a meritorious defense), versus that imposed in setting aside a default judgment. More particularly, we reassert that the burden on a person seeking to set aside a default judgment under Rule 60(b)(6) shall be that set forth in *Essex*. To the extent that the test applied in *First Nat'l Bank* and *Maulding* imposed a lesser burden on the party moving to set aside a default judgment under Rule 60(b)(6), these cases are overturned.

¶42    In *Essex*, we stated:

> A successful Rule 60(b)(6) motion requires that the movant demonstrate each of the following elements: (1) extraordinary circumstances; (2) the movant acted to set aside the judgment within a reasonable period of time; **and** (3) the movant was blameless. (Emphasis added.)

*Essex*, ¶ 25 (citations omitted). This well-established three-prong test requires that all three prongs be met. In *Orcutt v. Orcutt*, 2011 MT 107, 360 Mont. 353, 253 P.3d 884, a dissolution matter, we reviewed the wife's request to set aside a final judgment under Rule 60(b)(6). Applying the *Essex* test, and addressing the "extraordinary circumstances" prong, we stated that "extraordinary circumstances" include gross neglect or actual misconduct by an attorney. *Orcutt*, ¶ 12. We further noted that "Rule 60(b)(6) . . . is designed primarily for situations where a party is wronged through no fault of its own." *Orcutt*, ¶ 15. We determined that wife's attorney "grossly neglected" her case,

19

resulting in a flagrantly inequitable distribution of the marital estate. *Orcutt*, ¶ 17. This constituted extraordinary circumstances. Further, it was undisputed that the wife promptly moved to set aside the final judgment, and it was apparent that she was blameless. We therefore concluded that the district court had abused its discretion in denying her motion. *See also Bartell,* ¶ 25*; Wellnitz,* ¶ 18*; C.T.E.-H. v. T.M.E.*, 2004 MT 307, ¶ 45, 323 Mont. 498, 101 P.3d 254; *Bahm v. Southworth*, 2000 MT 244, ¶ 14, 301 Mont. 434, 10 P.3d 99; *Karlen v. Evans*, 276 Mont. 181, 190, 915 P.2d 232, 238 (1996).

¶43    In the case before us, Stockton has not met its burden of establishing extraordinary circumstances or blamelessness. Given the fact that Green has always conceded the propriety of a full offset against the judgment of the amounts she received from the insurance company, her conduct does not present the type of "gross neglect or actual misconduct" that existed in *Orcutt* as an extraordinary circumstance. Further, in light of proof from the process server that Stockton was served with the Complaint and Summons, the affidavit assertion of registered agent Mykel Stockton that he cannot recall seeing the Complaint does not established blamelessness. As we are here analyzing the propriety of the deemed–denial, we therefore conclude that the District Court did not slightly abuse its discretion in deeming denied Stockton's motion to set aside the default judgment.

**CONCLUSION**

¶44    For the foregoing reasons, we reverse the District Court's order granting Stockton's motion to set aside the default judgment, and direct the District Court to

20

withdraw its December 27, 2011 order, reinstate the default judgment, and enter a corrected judgment reflecting the remaining amounts owed to Green by Stockton.


/S/ Patricia Cotter


We Concur:

/S/ Beth Baker
/S/ Michael E Wheat
/S/ Brian Morris
/S/ Jim Rice
/S/ Laurie McKinnon


Chief Justice Mike McGrath concurs and dissents.

¶45     While I concur with the majority opinion, I write separately on the narrow issue addressing the standard to be used to set aside a default judgment raised by the cross-appeal.  I concur with the Court's determination that the trial court did not abuse its discretion, but I dissent from the majority's application of the three-part test used in *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 16, 338 Mont. 423, 166 P.3d 451, and other opinions.

¶46     The majority opinion makes clear that our case law is confusing, convoluted, and far too complex.  It does not need to be.  I agree with the Court's decision to overrule *Maulding v. Hardman*, 257 Mont. 18, 847 P.2d 292 (1993).  I would additionally cease stating the M. R. Civ. P. 60(b)(6) standard as a three-part test as we have done in the past

and as the Court does here. See ¶¶ 41-42. Instead, I would simply instruct the district courts to apply the plain language of Rule 60(b)(6) and to consider whether circumstances other than those listed in the first five subsections justify setting aside the judgment.

¶47 As an initial matter, our interpretations correctly incorporate a judicial policy that protracted and needless litigation is not favored. The process needs to come to a final resolution. "There must be some point at which litigation ends and the respective rights between the parties are forever established." *In re Marriage of Weber*, 2004 MT 211, ¶ 26, 322 Mont. 341, 96 P.3d 716. Setting aside a judgment is not a matter to be considered lightly. That principle should be incorporated in the criteria to be reviewed, and I agree with the Court in that regard.

¶48 My concern with the Court's approach is the use of the "three-part test." I do not suggest that a Rule 60(b)(6) movant does not have to demonstrate extraordinary circumstances to be entitled to relief. Requiring extraordinary circumstances is simply another way of saying that there must be some "other reason that justifies relief." In fact, demonstrating circumstances that justify relief should be the sole focus of Rule 60(b)(6) analysis. I also do not suggest that a Rule 60(b)(6) motion does not have to be filed within a reasonable time; subsection (c)(1) tells us that it must. It is not necessary, however, that a district court always require a movant to demonstrate "blamelessness." Its inclusion as an essential element muddles our analysis and detracts from what should be the court's focus—whether justice requires relief from the judgment.

¶49 The language of Rule 60(b)(6) is purposely broad. It is a catch-all provision to cover unforeseen situations not addressed by the first five clauses of Rule 60(b). *In re Marriage of Tesch*, 199 Mont. 240, 245, 648 P.2d 293, 196 (1982) (citing Charles Alan Wright, Arthur Raphael Miller, & Edward H. Cooper, *Federal Practice and Procedure* vol. 11, § 2864, 211-12 (1st ed., West 1973)). As the United States Supreme Court noted, "the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."[1] *Klapprott v. United States*, 335 U.S. 601, 614-15, 69 S. Ct. 384, 390 (1949).

¶50 As the majority opinion notes, we have long held that relief under subsection (6) is only available in extraordinary situations not covered by the first five subsections. *Tesch*, 199 Mont. at 245, 648 P.2d at 293; *In re Marriage of Castor*, 249 Mont. 495, 500, 817 P.2d 665, 668 (1991); *Karlen v. Evans*, 276 Mont. 181, 190, 915 P.2d 232, 238 (1996). That limitation derives from the language of the Rule itself. Rule 60(b)(6) permits a court to grant relief from a judgment for "any *other* reason that justifies relief." (Emphasis added).

¶51 In *Karlen*, we considered whether a judgment could be set aside under subsection (6) for an attorney's mistake, inadvertence, misconduct, or neglect in representing a client, or whether relief in those circumstances must be obtained under subsection (1). Subsection (1) provides that a judgment can be set aside for "mistake, inadvertence,

---

[1] We purportedly adopted this interpretation of subsection (6) in *Bartell v. Zabawa*, 2009 MT 204, 351 Mont. 211, 214 P.3d 735, yet in that case we nevertheless applied the three-part test as the Court does here.

23

surprise, or excusable neglect." We held that subsection (1) will be applicable in ordinary circumstances of attorney error, but that,

> where the moving party can meet the higher burden of demonstrating extraordinary circumstances, gross neglect or actual misconduct, that the client was blameless and he or she acted to set aside the default within a reasonable period of time, then, under our case law, subsection (6) of Rule 60(b) is available.

*Karlen*, 276 Mont. at 190, 915 P.2d at 238. Importantly, we did not hold that was the exclusive method of satisfying the requirement of subsection (6).

¶52 In *Bahm v. Southworth*, 2000 MT 244, 301 Mont. 434, 10 P.3d 99, another case involving attorney error, we restated our *Karlen* holding in unqualified terms as a three-part test. We held that "Rule 60(b)(6) applies when the movant demonstrates each of the following elements: 1) extraordinary circumstances including gross neglect or actual misconduct by an attorney; 2) the movant acted to set aside the judgment within a reasonable time period; and 3) the movant was blameless." *Bahm*, ¶ 14. We concluded that the district court properly denied the Rule 60(b)(6) motion because the movant had failed to demonstrate each of the three "required elements." *Bahm*, ¶ 14. In doing so, we laid the groundwork for our current confusion.

¶53 As the Court does here, we have since frequently cited the three-part test as the standard to be applied to all Rule 60(b)(6) motions. *See Essex Ins. Co.*, ¶ 25; *In re Paternity of C.T.E.-H.*, 2004 MT 307, ¶ 45, 323 Mont. 498, 101 P.3d 254; *In re Marriage of Orcutt*, 2011 MT 107, ¶ 12, 360 Mont. 353, 253 P.3d 884. This three-part test needlessly confuses Rule 60(b)(6) analysis and distracts from what the trial court should be focusing on; whether the circumstances justify relief. By using the three-part test, we

24

have needlessly narrowed the application of a rule that was intended to address a wide range of unknown circumstances.

¶54  Our holding in *Karlen* did not set forth the exclusive path for relief under Rule 60(b)(6).  Yet our repeated recitation of the three-part test has made it so.  As noted above, I believe that the sole focus should be on whether the circumstances justify relief.  Other "elements" are unnecessary when considering the merits of a Rule 60(b)(6)motion.  The requirement that a Rule 60(b)(6) motion must be filed within a reasonable time used to be mandated by Rule 60(b)(6) itself.  That requirement is now set forth as Rule 60(c)(1).  Thus its inclusion in the analysis of the merits of a Rule 60(b)(6) motion is redundant and unnecessary.

¶55  Additionally, requiring a movant to prove "blamelessness" should be limited to cases in which the circumstances that allegedly justify relief are an attorney's mistake, inadvertence, misconduct, or neglect in the representation of a client.  In those cases, like in *Karlen*, the movant must demonstrate blamelessness because otherwise subsection (1) would be applicable.  However, the "blameless" component unnecessarily constricts our review in other cases.  While a party's fault or lack of good faith can certainly be a factor in the court's consideration of whether the circumstances justify relief, the wide array of "other circumstances" that could conceivably justify relief under Rule 60(b)(6) will not always require the movant to demonstrate "blamelessness."

¶56  This approach accurately reflects our holdings before the three-part test led us astray.  It is also consistent with the approach taken by the federal courts, which do not use a three-part test when considering the analogous federal rule.  *See Klapprott*, 335

U.S. at 614-15, 69 S. Ct. at 390; *Ackermann v. United States*, 340 U.S. 193, 197-200, 71 S. Ct. 209, 211-12 (1950); *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863-64, 108 S. Ct. 2194, 2204-05 (1988); *Gonzalez v. Crosby*, 545 U.S. 524, 534-35, 125 S. Ct. 2641, 2649-50 (2005); *Mackey v. Hoffman*, 682 F.3d 1247, 1250-51 (9th Cir. 2012).

¶57 Rule 60(b)(6) was meant to be flexible and malleable to accommodate unforeseeable situations. A catch-all provision, by its very nature, is not meant to be limited. The three-part test attempts to inject certainty into a rule that was meant to address uncertain circumstances. I would not apply the three-part test and would instead instruct the trial courts to apply the plain language of the Rule. Most situations will be covered by the first five subsections of the Rule. In extraordinary cases that are not covered by the first five subsections, however, the trial court should be given the discretion to consider *all* of the relevant factors and not just those that we have previously identified as pertinent. Our prior cases serve as guidance to help identify relevant considerations in different circumstances. The trial courts' analysis should focus simply on whether the circumstances justify relief. While this standard is somewhat vague, it is purposely and necessarily so. Consequently, I dissent from the application of the three-part test first articulated in *Bahm* and adopted in subsequent opinions.


/S/ Mike McGrath

26