DA 13-0458

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 77

JAS, INC.,

        Plaintiff and Appellant,

    v.

RICHARD D. EISELE; LAURIE EISELE; INDYMAC
BANK, F.S.B./DOCUMENT MANAGEMENT;
INDYMAC BANK, F.S.B.; CHARLES J. PETERSON,
ESQ.; COUNTRYWIDE HOME LOANS, INC.; LSI
RECORDING DEPARTMENT; NATIONAL TITLE
CLEARING; ONEWEST BANK, FSB; FIRST AMERICAN
TITLE COMPANY OF MONTANA, INC.; MACKOFF
KELLOGG LAW FIRM; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.; CITY FINANCE
DEPARTMENT; YELLOWSTONE COUNTY TREASURER;
MONTANA DEPARTMENT OF REVENUE; and all other
persons, unknown, claiming or who might claim any
right, title, estate, or interest in or lien or encumbrance
upon the real property described in the complaint
adverse to plaintiff's ownership or any cloud upon
plaintiff's title thereto, whether such claim or possible
claim be present or contingent,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and For the County of Yellowstone, Cause No. DV 12-0173
                Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                W. Scott Green; Patten, Peterman, Bekkedahl & Green, PLLC;
                Billings, Montana

For Appellees:

    Charles K. Smith; Poore, Roth & Robinson, P.C.; Butte, Montana

Submitted on Briefs:  February 12, 2014
Decided:  March 25, 2014

Filed:

_____
Clerk

2

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 In May 2011, IndyMac Bank foreclosed on a residence located at 6333 Bristlecone Place, Billings, Montana (Bristlecone property). A Trustee's Sale was scheduled for September 2011, and the required affidavit of mailing was timely recorded. The sale was subsequently rescheduled, and a cancellation notice was filed as well as a second Notice of Trustee's Sale announcing the new sale date. However, a second affidavit of mailing was not recorded on or before the date of the actual Trustee's Sale. The sale was conducted on November 15, 2011, and JAS, Inc. (JAS) purchased the property at that time for $282,488.08.

¶2 In February 2012, JAS initiated a quiet title action in the Thirteenth Judicial District Court, Yellowstone County. The persons and entities listed in the caption of this case were named as defendants and were personally served with process. Multiple defendants defaulted, including Countrywide Home Loans (Countrywide) and Mortgage Electronic Registration Systems (MERS). Bank of America (BOA), which had acquired Countrywide in 2008, was not named or served as a party defendant and therefore did not appear in the proceeding. Final judgment was issued quieting title to the Bristlecone property in JAS's name on July 10, 2012. Seven days later, Countrywide and MERS jointly moved to have the entries of default entered against them set aside. On July 24, 2012, BOA moved to intervene in the proceeding and also sought to have the default entered against Countrywide set aside. The District Court conducted a hearing on

3

October 18, 2012, and on June 26, 2013, granted these motions. JAS appeals. We affirm.

## ISSUES

¶3      A restatement of the dispositive issues is:

¶4      Did the District Court abuse its discretion in granting BOA's motion to intervene and its motion to set aside the default judgment entered against Countrywide?

¶5      Did the District Court manifestly abuse its discretion by granting MERS's motion to set aside the default judgment entered against it?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6      In 2004, Richard and Laurie Eisele entered into a loan with IndyMac F.S.B. to purchase a residence located at 6333 Bristlecone Place. The loan was secured by a Deed of Trust dated May 18, 2004. In November 2005, the Eiseles entered into a loan with Countrywide. This loan was secured by a second position lien on the Bristlecone property and a Deed of Trust dated November 23, 2005. In 2008, BOA purchased Countrywide. BOA claims that Countrywide's interest in the Bristlecone property was transferred to it at that time. In early 2011, the Eiseles defaulted on their loan to IndyMac. The Trustee and Beneficiary associated with IndyMac agreed to sell the property by Trustee's Sale.

¶7      The Trustee prepared a Notice of Trustee's Sale on May 6, 2011, indicating that the Bristlecone property would be sold on September 13, 2011. An Affidavit of

4

Mailing,[1] filed on May 16, 2011, indicates that the May 6 Notice was mailed to the Eiseles, Countrywide, and MERS.[2] On June 30, 2011, the Trustee issued a Cancellation of Notice of Trustee's Sale. On July 11, 2011, the Trustee issued a second Notice of Trustee's Sale, stating the sale would be conducted on November 15, 2011. No Affidavit of Mailing pertaining to the November sale was issued; therefore, we do not know who was served with the second Notice. It is undisputed, however, that BOA was not personally served with notice of either scheduled Trustee's Sale.

¶8      At the Trustee's Sale on November 15, JAS purchased the Bristlecone property for $282,488.08. A deed of sale was issued on November 17, 2011. JAS is a company owned by Steve Zimmer through which Zimmer purchases properties at trustee sales, remodels or repairs the properties, and then resells them. Zimmer testified that while he had bought and sold several properties through JAS, he had purchased the Bristlecone property with the intent that it serve as his family's residence.

¶9      Several days after the Trustee's Sale, a representative of Northwest Trustee (NTS) approached Zimmer and offered to purchase the Bristlecone property. According to the District Court's order, NTS had been hired to represent the interests of BOA at the foreclosure sale. Following negotiations, JAS agreed to sell the property to NTS for

---

[1] Section 71-1-315, MCA, requires that an Affidavit of Mailing be filed on or before the date of a Trustee's Sale. The affidavit identifies the parties to whom the notice of the sale was mailed.
[2] The Notice was also mailed to Recording Department, Coraopolis, Pennsylvania, but that mailing appears to have no bearing in this proceeding.

5

$473,000. On December 2, 2011, NTS presented to JAS a cashier's check issued by BOA in the agreed-upon amount.

¶10 While awaiting the completion of the sale of the Bristlecone property to NTS, Zimmer and his wife made several visits to the house. On or around December 9, they found a notice indicating that Field Assets Services, LLC had winterized the house. Not having requested such services, the Zimmers called Field Assets and were told that BOA had requested and paid for the winterizing services. The Zimmers also learned during this time that BOA had retained an engineering firm to perform a structural assessment of the residence.

¶11 On approximately December 15, NTS withdrew its offer to purchase the property and requested the return of BOA's cashier's check. NTS claimed that there had been a flaw in the way the sale was conducted, and that the sale to JAS was therefore void. JAS returned the check as requested.

¶12 JAS filed a quiet title action in the Thirteenth Judicial District Court on February 8, 2012. As indicated, it named as defendants those parties listed in the caption of this case and served them with the complaint. It did not name or serve BOA as a defendant. Subsequently, numerous defendants were dismissed from the proceeding after disclaiming an interest in the property, while others, including Countrywide and MERS, were defaulted.

¶13 On July 11, 2012, the District Court entered its Final Judgment and Decree, quieting title in the name of JAS. Notice of entry of this final judgment was filed the

same day.  On July 16, 2012, apparently without knowledge that default judgment had been entered on July 11, Countrywide and MERS filed a joint motion to have the entries of default entered against them set aside.  On July 24, 2012, BOA moved to intervene under M. R. Civ. P. 24(a) (Rule 24) and to have the default judgment against Countrywide set aside.  It also filed an answer to JAS's complaint.

¶14    JAS objected to the motions filed by Countrywide, MERS, and BOA and requested a hearing.  The District Court scheduled a hearing for September 21, 2012.  On September 10, JAS's counsel requested that the September 21 hearing date be vacated due to a conflict on his calendar.  The District Court therefore vacated the hearing and rescheduled it for October 18, 2012.  The hearing was held as scheduled, and the Zimmers were the only witnesses.  JAS at no time raised an argument that the District Court had failed to rule upon the motions filed by Countrywide, MERS, and BOA within the 60 days provided for doing so under M. R. Civ. P. 60(c)(1) (Rule 60).

¶15    On June 26, 2013, the District Court granted BOA and MERS's motions. Applying Rule 24(a), the court concluded BOA had established its right to intervene.  It reasoned that the Bank had timely filed its motion to intervene, and that it had an interest in the subject matter of the action as the current holder of the second note on the property by virtue of its acquisition of Countrywide.  The court further held that BOA's interest in the property could be impaired by the outcome of the action and that its interest would not be protected by any existing party.  The court reasoned that JAS and the Zimmers knew of BOA's interest in the property based upon the events that transpired immediately

7

following the Trustee's Sale and prior to JAS's filing of the quiet title action. It noted the Zimmers' knowledge that BOA had hired a winterizing service and requested an engineer's appraisal of the Bristlecone property. JAS also clearly knew that the check written for the purchase of the Bristlecone property in December 2011 had been issued by BOA. The court therefore concluded that JAS should have named BOA as a party defendant in the quiet title action and served it with process. Consequently, the court allowed BOA to intervene. It also granted BOA's motion to set aside the default judgment entered against Countrywide.

¶16 The District Court next addressed Countrywide and MERS's joint motion. Although their original motion had been a motion to set aside the entry of default, given the interim entry of default judgment the District Court analyzed and ruled on the motion as one to set aside a default judgment. Because Countrywide had held no interest in the Bristlecone property since BOA acquired Countrywide in July 2008, the court addressed the motion only as it pertained to MERS. The court concluded that MERS had established "good cause" to set aside the default judgment, and it therefore granted MERS's motion.

¶17 Lastly, the District Court concluded that JAS did not establish that it would be prejudiced by the court's rulings setting aside the entries of default judgment.

¶18 JAS filed a timely appeal.

**STANDARDS OF REVIEW**

¶19    As a general rule, we review a district court's ruling on a Rule 60(b) motion seeking relief from a judgment or an order for an abuse of discretion.  *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 16, 338 Mont. 423, 166 P.3d 451.  In reviewing a court's decision pertaining to a default judgment, we are guided by the principle that every litigated case should be decided on its merits; judgments by default are not favored. *Matthews v. Don K Chevrolet*, 2005 MT 164, ¶ 9, 327 Mont. 456, 115 P.3d 201.

¶20    We have set forth two different standards of review of motions seeking to set aside a default judgment, depending upon the disposition of the motions in the district court.  If the district court *grants* the motion and opens up the action for a trial on the merits, we will set aside the district court's order only "upon a showing of manifest abuse" of discretion.  If the district court *denies* a motion to set aside a default judgment, only a "slight abuse" of discretion need be shown to warrant reversal.  *Essex*, ¶ 17.

¶21    A district court's ruling on a motion to intervene is reviewed for an abuse of discretion.  A district court abuses its discretion when it acts arbitrarily, without the employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice.  *Aspen Trails Ranch, LLC v. Simmons*, 2010 MT 79, ¶ 29, 356 Mont. 41, 230 P.3d 808.

9

**DISCUSSION**

¶22 *Did the District Court abuse its discretion in granting BOA's motion to intervene and its motion to set aside the default judgment entered against Countrywide?*

¶23 We first address BOA's motion to intervene under Rule 24(a). BOA argues that though JAS well knew of its interest in the subject property before filing suit to quiet title, it deliberately chose not to name BOA as a party defendant, choosing instead to deem it an unnamed defendant subject to service of process by publication. BOA argues that because it was not named as a party, its only option upon learning of the default of its predecessor Countrywide was to seek intervention. JAS counters that BOA's motions were not ruled upon within 60 days of filing, and that therefore the 60-day "deemed denied" limitation set forth in Rule 60(c) applies. It maintains that because BOA failed to appeal the deemed denial, it is now bound by the quiet title judgment. In response, BOA argues that the "deemed denial" limitation set forth in Rule 60(c) has no application to a Rule 24(a) motion to intervene.

¶24 We agree with BOA. BOA sought intervention to achieve party status so as to protect its interest in the subject property. A motion for relief under Rule 60(b) is intended to relieve a party from a final judgment or order. BOA was not named as a party to the quiet title action; therefore, Rule 60(b) and (c) have no application to its motion to intervene. The question of whether the Bank had a right to intervene in this action is appropriately analyzed under Rule 24(a).

¶25 Rule 24(a) allows for intervention as a matter of right. It provides:

> On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by statute; or
> (2) claims an interest relating to the property or transaction which is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless the existing parties adequately represent that interest.

¶26 As we noted in *Estate of Schwenke v. Becktold*, 252 Mont. 127, 827 P.2d 808 (1992), an application for intervention as a matter of right must: (1) be timely; (2) show an interest in the subject matter of the action; (3) show that the protection of the interest may be impaired by the disposition of the action; and (4) show that the interest is not adequately represented by an existing party. *Schwenke*, 252 Mont. at 131, 827 P.2d at 811. The District Court determined that BOA had satisfied each of these criteria. It also determined that because JAS knew of BOA's interest in the property before it filed its complaint, it should have named and personally served BOA as a party defendant.

¶27 We agree with the District Court. BOA filed its motion to intervene on July 24, 2012—just slightly more than 5 months after the complaint was filed and a mere 2 weeks after judgment was entered. As we did in *Aspen Trails Ranch*, ¶ 35, we conclude that though filed after the entry of judgment, BOA's motion to intervene did not cause delay in this matter. Moreover, BOA established that it had an interest in the subject matter, that protection of that interest may be impaired by the outcome of the action, and that it was not adequately represented or protected by an existing party. Because BOA met the

11

express requirements of Rule 24(a), we conclude that the District Court did not abuse its discretion in granting BOA's motion to intervene.

¶28 Turning to the court's order granting BOA's motion to set aside the entry of default judgment against Countrywide, we note that it did so only because Countrywide was BOA's predecessor. Countrywide in fact held no present interest in the subject property at the time suit was filed. Because the court properly allowed BOA to intervene and it is the actual party in interest, we need not further analyze the order setting aside the default judgment as to Countrywide.

¶29 *Did the District Court manifestly abuse its discretion by granting MERS's motion to set aside the default judgment against it?*

¶30 We first address JAS's argument that MERS is bound by the quiet title judgment because it failed to appeal its "deemed denied" motion for relief from the default judgment within the time limits imposed under Rule 60. As noted above, MERS's motion to set aside the default was filed on July 16, 2012; however, the District Court did not issue its ruling until June 26, 2013. JAS argues here that MERS's motion to set aside the default judgment was "deemed denied" 60 days after the date of its filing, thus obligating MERS to file a timely appeal, which it did not do. JAS cites our decision in *Green v. Gerber*, 2013 MT 35, 369 Mont. 20, 303 P.3d 729, for the proposition that the 60-day time limit imposed by Rule 60(c)(1) and the obligation to timely appeal therefrom is to be strictly enforced. It therefore argues that MERS is now bound by the quiet title judgment. Implicit in this argument, though not stated, is that the District Court erred in

12

ruling on MERS's motion to set aside the default judgment after 60 days had passed from the date of filing.

¶31 In *Green*, Green appealed from an order granting a motion to set aside a default judgment that was entered 68 days after the filing of the motion. Green argued that the district court lacked jurisdiction to set aside the default judgment once 60 days had expired. Overruling previous cases in which we had interposed such a jurisdictional bar, we held that the district court does not lose jurisdiction upon the expiration of the 60-day time period. *Green*, ¶ 24. However, we nonetheless concluded that the time limits set forth in Rule 60 are mandatory and should be strictly enforced, and that the district court erred in "categorically ignoring the expiration of the deadline and granting the motion to set aside the default judgment." *Green*, ¶ 27. Were this our final word in *Green*, we might well be compelled to agree with JAS. However, we said in *Green* that the rule that such deadlines must be strictly enforced "carries with it a caveat." *Green*, ¶ 28. We observed that if a party waits too long to raise the point, the time prescription can be forfeited. We further observed that "it is a well-established maxim of law that 'acquiescence in error takes away the right of objecting to it.'" *Green*, ¶ 28 (quoting § 1-3-207, MCA). We conclude this caveat applies here and bars JAS's procedural argument that MERS's failure to appeal from the deemed denial of its motion is fatal.

¶32 As noted above in ¶ 14, at JAS's request the court scheduled a hearing on MERS's motion to have the default entered against it set aside for September 21, 2012. The scheduled hearing was within 60 days of the filing of the motion. However, JAS moved

13

to continue the hearing, and as a result the hearing was set over until October, past the 60-day deadline. MERS did not raise any concern about this delay, and notably, neither did JAS. Further, JAS did not argue at the hearing that the court was then precluded by the passage of time from ruling on the pending motions. Thus, it acquiesced in the delay and "wait[ed] too long to raise the point." *Green*, ¶ 28. We therefore conclude that JAS forfeited the benefit of the 60-day time prescription, and proceed to address the merits of the District Court's order setting aside the default judgment.

¶33 MERS was named as a defendant and personally served with the complaint through its registered agent on April 23, 2012. On June 28, 2012, the clerk of court entered default against MERS based upon MERS's failure to file an answer to the complaint. On July 10, 2012, the District Court entered final judgment in the case, resulting in a default judgment against those parties against whom a default had previously been entered. On July 17, 2012, before learning that a default judgment had been entered against it, MERS filed a motion to set aside the entry of default by the clerk of court, arguing that it had "good cause" under M. R. Civ. P. 55(c) (Rule 55) to have the default set aside. In response to MERS's motion to set aside the default, JAS pointed out that a *default judgment* had been entered by the District Court. Acknowledging as much in its reply, MERS argued that its neglect in failing to timely respond to the complaint was excusable, and that it should be relieved of the default judgment pursuant to Rule 60(b)(1).

14

¶34 The District Court proceeded to analyze whether MERS had established "good cause" to set aside the default judgment, in reliance upon our decision in *Blume v. Metropolitan Life Ins. Co.*, 242 Mont. 465, 791 P.2d 784 (1990). In *Blume*, Metropolitan moved to have the default judgment entered against it set aside. The district court did not rule on the motion within the time allowed under Rule 60(c), and it was deemed denied. Metropolitan appealed, and we reversed and remanded. *Blume*, 242 Mont. at 466, 791 P.2d at 785. In analyzing the issue, we focused on Rule 55. The 1989 version of Rule 55(c) provided: "For good cause shown the court may set aside an entry of default and, if a judgment of default has been entered, may likewise set it aside in accordance with Rule 60(b)." We stated in *Blume* that, "[a]s noted in Rule 55(c), a default judgment may only be set aside 'for good cause shown.'" *Blume*, 242 Mont. at 467, 791 P.2d at 786. We then repeated and applied the four-prong "good cause" test first enunciated in *Bowen v. Webb*, 34 Mont. 61, 85 P. 739 (1906). Under this test, a defaulting party shows "good cause" when: (1) the defaulting party proceeded with diligence; (2) the defaulting party's neglect was excusable; (3) the judgment, if permitted to stand, will affect the defaulting party injuriously, and (4) the defaulting party has a meritorious defense to plaintiff's cause of action. *Bowen*, 34 Mont. at 65, 85 P. at 740. While we agree with the district court that the four-part test announced in *Bowen* is still good law with respect to the consideration of Rule 60(b)(1) motions, the court in *Blume* erred to the extent that it imported the Rule 55(c) "good cause" standard into its analysis of the default judgment. *See Green*, ¶ 40 (It is error to import a "good cause" analysis "into cases concerned with

15

setting aside a default judgment."). However, the District Court's analysis of the case under the four-prong test was appropriate.

¶35 MERS argued that it did not respond to the quiet title complaint because it believed at the time that NTS had been engaged by BOA to protect MERS's interest and to represent MERS in JAS's quiet title action. When MERS discovered NTS was not representing it, MERS immediately retained counsel. By this time, however, final judgment had been entered. Counsel for MERS filed its motion to set aside the entry of default just five days after final judgment was entered. The District Court concluded that MERS's failure to file an answer under the stated circumstances constituted excusable neglect, and that upon learning that it was not represented, MERS had proceeded with diligence. The court further concluded that MERS would be injured if the default judgment was left to stand because MERS would lose its interest in the property at issue. Lastly, the District Court agreed that MERS had a meritorious defense to the quiet title complaint because the Trustee's Sale by which JAS acquired the property was defective, there having been no Affidavit of Mailing recorded prior to the date of the sale, as required under § 71-1-315(2), MCA. Having concluded that all four prongs of the test set forth in *Blume* were satisfied, the District Court granted MERS's motion to set aside the default judgment.

¶36 On appeal, JAS claims that MERS has no meritorious defense, and that it would be unduly prejudiced if we affirm the court's decision to set aside the default judgment against MERS. Clearly, the court found the defense regarding the defects in the Trustee's

Sale meritorious. As to prejudice, we note that setting aside the default judgment is not a fatal blow to JAS, as it will still be free to litigate the merits of its quiet title action on remand.

¶37 As we held in *Essex*, this Court will reverse an order setting aside a default judgment only "upon a showing of a manifest abuse of discretion." *Essex*, ¶ 17. Under the facts presented here, and in light of our stated preference that cases should be decided on their merits as stated in *Matthews*, ¶ 9, we cannot conclude that the District Court manifestly abused its discretion in setting aside the default judgment as to MERS. We therefore affirm that order.

## CONCLUSION

¶38 For the foregoing reasons, we conclude the District Court did not manifestly abuse its discretion in granting MERS's motion to set aside the default judgment, nor did it err in granting BOA's motion to intervene in this proceeding.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JIM RICE